## CUMMING *v.* THE STATE.

1. When two or more persons are jointly tried for a felony and
each insists upon having the full number of peremptory chal-
lenges to jurors to which he would be entitled if tried alone,
it is the duty of the judge, upon the request of the accused,
made when the first juror is put upon them, to determine at
once the total number of such challenges which will be allowed
to the accused.

2. While provocation by words, threats, menaces or contemp-
tuous gestures shall in no case be sufficient to reduce a homi-
cide below the grade of murder, when the killing is done not
because or on account of any fear in the mind of the slayer,
but solely for the purpose of resenting the provocation given,
it is nevertheless true that threats, accompanied by menaces,
though the latter do not amount to an actual assault, may in
some instances be sufficient to arouse the fears of a reasonable
man that his life is in danger, or that a felony is about to be
perpetrated upon him.  In all such cases the motive with which
the slayer acted is for determination by the jury; and if it be
claimed that the homicide was committed, not in a spirit of
revenge, but under the fears of a reasonable man, it is for the
jury, and not for the judge, to decide whether or not the cir-
cumstances were sufficient to justify the existence of such fears.

(*a*) In the present case it was error to charge:  "A fear growing
out of and only supported by mere words, threats, menaces or
contemptuous gestures, is not the fear which would justify or
excuse another for committing a homicide."

3. The general charge, except as to the error above pointed out,
was a fair submission of the law upon the issues involved, the
requests to charge were sufficiently covered, and there was no
error in rejecting evidence.

Argued October 5,—Decided October 19, 1896.

Indictment for murder.   Before Judge Hart.   Wilkinson superior court.   April term, 1896.

*H. P. Howard, Whitfield & Allen* and *Roberts & Pottle*, for plaintiff in error.   *J. M. Terrell, attorney-general, H. G. Lewis, solicitor-general, Anderson, Felder & Davis* and *J. W. Lindsey*, contra.

SIMMONS, Chief Justice.

Dave Cumming and two other persons were jointly indicted for murder.   He was found guilty, and his motion for a new trial being overruled, he excepted.

1. One of the grounds of the motion is that the court erred in refusing to rule, immediately after the first panel of the jury was put on the accused, that they were entitled to sixty strikes, that is to say, twenty strikes for each defendant.   After the first juror on the panel had qualified and had been put upon the accused, counsel for the accused informed the court that they would claim this number of strikes.   Counsel for the State resisted this claim; and the court refused to rule on the proposition, stating that it was not at the proper stage of the trial to rule on the question.   Section 974 of the Penal Code declares that "every person indicted for a crime or offense which may subject him to death, or four years' imprisonment in the penitentiary, may peremptorily challenge twenty of the jurors impaneled to try him."   And this court has held that where persons jointly indicted for such an offense go to trial together, they do not waive any right of peremptory challenge, but each is entitled to his full statutory allowance.   *Cruce v. The State*, 59 *Ga.* 83.   And see *Butler v. The State*, 92 *Ga.* 601.   In this case, therefore, the claim of the accused ought to have been allowed, and the motion having been made when the first juror was put upon the accused, and an immediate ruling requested, the judge ought not to have postponed the determination of the question as he did.   It may have been important for the accused, in determining

as to what jurors they would accept or reject, to know at the outset how many strikes would be allowed them by the court.

2. It is complained that the court erred in charging that "a fear growing out of and only supported by mere words, threats, menaces or contemptuous gestures, is not the fear which would justify or excuse another for committing a. homicide." The things here mentioned, it is true, will not. avail the person killing when, in order to reduce the homicide to voluntary manslaughter, he sets up that the killing was done in the excitement of passion and because of provocation; for the Penal Code, in dealing with this defense (§65), declares that "provocation by words, threats, menaces or contemptuous gestures, shall in no case be sufficient to free the person killing from the guilt and crime of murder." But it is not the law that none of these things shall be sufficient to produce such a fear as will justify a killing. The question of what is sufficient to reduce the grade of the crime where a killing is prompted by passion is one thing, and the question of what is sufficient to excite the fears of a reasonable man that a felony is about to be committed upon him is another and very different thing. The Penal Code (§71) declares that "a bare fear of any of those offenses to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient. to excite the fears of a reasonable man;" but it does not undertake to define what circumstances shall or shall not be sufficient to excite such fears. It is true that in order to justify a homicide, there must be something more than mere verbal threats. There must be an appearance of imminent danger. The means of inflicting the threatened injury must apparently be at hand, and there must be some manifestation of an intention to inflict the injury presently; but it is not essential that there should be an actual assault. Mere threats and menaces may, under some circumstances,

be sufficient. A menace is defined to be "the show of an intention to inflict evil;" to menace is "to act in a threatening manner." (Webster's Dictionary.) Any overt act of a threatening character, short of an actual assault, is a menace; and it will not do to say, as the court in effect did in this instance, that no such act can be considered sufficient to excite the fears of a reasonable man. If a man of reckless and violent character, who bears a grudge against me and has made threats, which have been communicated to me, that he will kill me on sight, approaches me in an angry and threatening manner, with a deadly weapon in his hand, though the weapon is not then directed or aimed at me, and declares that he intends then and there to kill me, this is no more than a menace, but the law does not say: "You shall not take him at his word until he actually assaults you; until he does, any fear you may have that he is about to carry out his threats is unreasonable; and if you kill him, although you do so under the belief that the killing is necessary to save your own life, your fears are no defense." To hold that this is the law would be to exclude as a defense, in such cases, the fears of a reasonable man, or to say as a matter of law that fears are unreasonable when we are not able to say it as a matter of fact. It would in many cases render the right of self-defense practically nugatory; for it would postpone the exercise of the right until it would be of no avail. In Wharton on Criminal Law (vol. 2, §493), it is said: "A violent and perilous defense can only be employed in cases where there is an apparently violent and perilous attack. To sustain such a defense, however, the actual striking of a blow is not necessary, nor is it even requisite that the assailant be within striking distance, if the attack be apparently imminent." Mr. Bishop, after stating the doctrine that threats with no overt act and no imminent danger will not justify a homicide, says: "Not in conflict with this rule, a threatened blow need not be actually given." (Bishop's New Criminal Law, §872.)

It has been well said that "it is difficult to lay down a rule strictly governing all cases, the circumstances of the cases differ so widely. The overt act that will justify a defendant in assuming that his own life is then in danger, must depend upon the circumstances of each particular case. Cases may be readily supposed, and no doubt often occur, where to require a defendant to wait until his adversary actually begins the combat would be to require him to wait until there would be but little chance left of successful defense,—cases where the deadly purpose of the party is so fixed and determined, his character so reckless and bloody, his use of deadly weapons so expert and skillful, that to await his attack would be to await almost certain death; and the result of the rencounter would often depend upon which party was the quicker in action. In cases of this character, where the parties meet, a very slight movement might justify either party in acting at once upon the assumption that his life is then in instant peril. Or cases might occur where the fact that the deceased met the defendant under the particular circumstances and in connection with previous facts, might show that the deceased sought the meeting with a deadly purpose, and be in itself an overt act. These are doubtless extreme cases; but they are used to show that the overt act spoken of is a question depending upon the entire circumstances of each particular case; and also to illustrate the meaning of the expression that the danger must be imminent at the moment." 1 Criminal Defenses, Horrigan & Thompson, 481. In the present case the accused claimed that the deceased, on the occasion in question and before the fatal blow was inflicted, cut him with a knife; and the court properly charged the law as to the right of the accused to defend himself against an actual assault with a deadly weapon, and the jury found against this theory. But there was evidence in behalf of the accused which they might have believed, and to which, but for the charge complained of, they might have given

effect in his favor, that whether the deceased actually used the knife upon the accused or not, he had a knife in his hand and was making hostile demonstrations and threatening to kill the accused.   Whether the circumstances were such as to excite the fears of a reasonable man that a felony was about to be committed upon him, and that it was necessary to kill the other party in order to prevent it, was a question to be determined by the jury, in the light of their own judgment and experience; and it was error for the court to hold in effect that these circumstances were not sufficient; thus excluding them as a defense unless they were accompanied by an actual assault upon the person of the accused.   See *Howell* v. *The State*, 5 *Ga.* 49; *Monroe* v. *The State*, *Id.* 135, 136; *Braswell* v. *The State*, 42 *Ga.* 609; *Cannon* v. *The State*, 80 *Ga.* 758.

3. The general charge, except as to the error above pointed out, was a fair submission of the law upon the issues involved; the requests to charge were sufficiently covered, and there was no error in rejecting evidence.

*Judgment reversed.*