## JOHNSON *v*. THE STATE.

105　665
114　451,
105　665
124　797

1. In a trial for murder where one of the theories of the defense, based either upon the prisoner's statement or the sworn testimony, is that the accused at the time of the killing was acting under the fears of a reasonable man, believing that in order to save his own life it was necessary to take the life of the deceased, such fears being occasioned partly by threats of the deceased to kill the accused, coupled with the drawing of a deadly weapon, it was error for the court, in charging the jury upon the subject of reasonable fears, to state that "a mere threat is not sufficient; the mere drawing of a weapon or show of a weapon is not sufficient." While provocation by words, threats, menaces or contemptuous gestures is not sufficient to justify the excitement of passion and reduce a homicide below the grade of murder when the killing is done, not on account of any fear in the mind of the slayer, but solely to resent the provocation given, it is nevertheless true that such acts may in some instances be sufficient to arouse the fears of a reasonable man that his life is in danger; the same being a question to be determined by the jury.

2. The charge of the court, except as above pointed out, was a fair presentation to the jury of the law upon the issues involved.

Argued October 4,—Decided October 13, 1898.

Indictment for murder. Before Judge Callaway. Richmond superior court. April term, 1898.

Humphrey Johnson was indicted for murder in the slaying of Clarence Merian, and was found guilty of manslaughter. His motion for a new trial was overruled, and he excepted. In the charge to the jury appears a summary of the contentions of each side of the case, in substance as follows: The State contends, that on the night of the day charged in the indictment, at Dan Bowles's store, the defendant and Merian started to play, and while engaged in playing and tussling became angered, or some words passed between them; that Merian cursed the defendant, and in the scuffle he threw the defendant off the veranda where they were playing, after which they were separated,

and defendant went into the store; that Merian sat upon a bench on the veranda and there remained; that defendant went to a boy who was in the store and got from him a pistol, went to the door and made some remark to Merian, asking him if he thought he had the advantage of him, or something of that kind, and immediately or shortly thereafter the defendant began firing upon the deceased, and shot him twice, one bullet taking effect in his breast, the other in his wrist, and a third striking the bench or floor where he was sitting, defendant firing four or five shots; that he then ran off, and Merian also ran off; and that in four or five days Merian died from the effects of the wound in his breast.     The defendant contends, that in the play or scuffling Merian became angered, cursed defendant a number of times, calling him a most opprobrious name, and threw him from the veranda to the ground (Merian being much the stronger man); that when defendant endeavored to apologize or beg his pardon, Merian cursed at him, stating that he wanted none of his damned pardon; that defendant then left him, went into the store and got the pistol, but when he came to the door he had no intention of renewing the difficulty, and had no such idea when he still bantered Merian; that Merian replied to him with curses again, arose and put his hand behind him as if drawing a pistol, and started toward defendant; that Merian was in the act of drawing a pistol when defendant fired on him, which firing was done in self-defense; that defendant was soon afterwards seen running with a pistol in hand to the house of defendant's mother; and that he carried the pistol in there, and carried it to the house where he finally went.

In addition to the general grounds, the motion for a new trial makes the following assignments of error:

The court charged the jury in the language of the Penal Code, § 65.    It is contended that the latter part of this charge should have been qualified by an instruction that this rule applies only where the homicide is committed for the purpose of resenting provocation given; that threats and menaces may, under some circumstances (to be determined by the jury), be sufficient to excite the fears of a reasonable man that a felony is about to be committed upon him; and that such rule applies

only in the event the jury believe that, at the time defendant fired, the deceased was not attempting to commit a felony on him, and that the circumstances did not cause defendant as a reasonable man to believe that such was the purpose of deceased,. even if in fact it was not.

The court charged: "If the defendant inflicted the wound by shooting a pistol, which resulted in the death of Merian, and at the time he shot Merian his own life was not in actual danger, but the circumstances as they appeared to him were sufficient to excite the fears of a reasonable man that his life was in danger —the circumstances were sufficient to excite the fears of a reasonable man that Merian was trying to shoot him, and he acted under the excitement of such fears as that, and not in a spirit of revenge, then he had the right to shoot him; and if you find that to be the truth of this case, it would be your duty to acquit the defendant. Now, as I stated to you, a bare fear is not sufficient; a mere threat is not sufficient; the mere drawing of a weapon or show of a weapon is not sufficient." The last sentence is assigned as erroneous, for that the jury should have been left free to determine whether a threat or the drawing of a weapon would have been sufficient, under the circumstances, to excite the fears of a reasonable man that a felony was about to be committed upon him.

The court charged: "If in the investigation of this case you have a reasonable doubt as to whether or not at the time the defendant fired the shot which inflicted the wound that caused Merian's death, if you are satisfied beyond a reasonable doubt that he shot Merian or inflicted the wound which subsequently resulted in his death, he was acting in self-defense, or whether or not he was acting under the fears of a reasonable man, I say if you have any reasonable doubt as to the truth of either of these propositions, it would be your duty to give the defendant the benefit of that doubt and acquit him." The error specified is, that the court expressed an opinion as to what had been proved, to wit, that it was the wound inflicted by defendant that caused the death of Merian, which under the evidence was not conceded by defendant.

The court charged: "If you believe that a witness has not

sworn to the truth as to some material matter in the case,—i
you believe that a witness has sworn wilfully and knowingl
false as to some material matter in the case, you ought not t
consider the testimony of that witness at all, unless it is corrob
orated by other evidence; but you are the judges as to whethe
or not a witness has been impeached, and as to whether or no
you will believe the testimony of any single witness, or whethe
you will discredit it, or what weight you will give it." It i
insisted that this fails to make clear to the jury that, as to th
false testimony, the witness can not be restored to credibility a
all, nor corroborated; and that the charge does not point ou
that corroboration of such a witness, in order to restore him t
credibility as to any part of his testimony, must be as to som
material point in the case.

It is further contended that the court ought to have charge
the jury to the effect, that if they believed that defendant, afte
going into the store and procuring a pistol, came out and merel
bantered the deceased, with no intention of forcing him into
difficulty, and that conduct alone provoked deceased to make
murderous assault on defendant, then such conduct on defen
ant's part did not outlaw his right of self-defense, and he woul
be justified if he then killed deceased under the fears of a rea
onable man that his own life or person was in danger. It is i
sisted that this was the theory of the defense; that the eviden
demanded such a charge; and that by the failure of the cou
to give the same, the legal questions in the case were not fair
and fully presented, and defendant was thereby prejudiced.

E. B. *Baxter* and *Russell & Rosenfield,* for plaintiff in err
W. H. *Davis,* solicitor-general, by *Anderson, Felder & Dav*
contra.

SIMMONS, C. J.    The official report states all the facts nec
sary to a clear understanding of the case.    We have careful
read and considered the whole record, and the only error in t
able and admirable charge of our learned young brother on t
circuit bench is found in that ground of the motion for new tri
which is dealt with in the first headnote.    That error is so ma
rial and of such a nature that we are compelled to grant a n
trial.    The charge upon the point indicated is in direct c

dict with the ruling of this court in the case of *Cumming* v. *State*, 99 *Ga*. 662. We presume the attention of our learned brother, the trial judge, was not called to this case pending the trial below. It fully covers the case now under consideration. It shows that while threats, menaces, contemptuous gestures, etc., can not reduce the crime of murder to that of manslaughter, they may act upon a man so as to arouse his fears and make him believe himself in imminent danger. It covers the present case, and we deem further elaboration unnecessary.

Except the above-mentioned error, there was nothing to warrant the grant of a new trial in any of the points made in the motion for new trial.

*Judgment reversed. All the Justices concurring.*