## SMITH *v.* THE STATE.

1. A verdict finding one tried upon an indictment for murder guilty of "manslaughter" is, in legal effect, a verdict convicting him of "voluntary manslaughter."
2. Giving to the word "impeached" its strictly proper signification as applied to witnesses, a witness whose "unworthiness of credit is absolutely established in the mind of the jury" is impeached and ought not to be believed unless corroborated. It is, however, always a question for them whether or not any witness has been impeached. The word "im-

109　479
f112　643
j112　645

109　479
116　662

109　479
o118　79
118　806

109　479
121　333

109　479
122　571
c123　530

109　479
d126　113

peached," appearing in section 5295 of the Civil Code, is not there used in the sense above indicated, but as being synonymous with "attacked." The charge relating to the impeachment of witnesses, to which exception is made in the present case, is not, when taken in its entirety, out of harmony with what is now ruled.

3. When one on trial for murder sets up as his sole defense that the homicide was accidental, and supports the same both by sworn testimony and his statement, and the judge delivers to the jury an elaborate charge adapted throughout to a case of intentional killing, without in any manner alluding to this defense until about to conclude his instructions, and then, after very briefly referring to the contention of the accused and the law applicable thereto, adds: "I see I have got that noted here, but in my charge I did not think to call your attention to it," a verdict against the accused should be set aside.

Argued October 5, 1899. — Decided January 24, 1900.

Indictment for murder. Before Judge Littlejohn. Webster superior court. April term, 1899.

*J. B. Hudson, S. R. Stevens,* and *Allen Fort,* for plaintiff in error. *F. A. Hooper, solicitor-general,* contra.

LUMPKIN, P. J. 1. In this case the jury, upon an indictment for murder, returned a verdict finding the plaintiff in error guilty of "manslaughter." One ground of his motion for a new trial alleges that this verdict "is too vague, indefinite, and uncertain to authorize sentence and judgment," but in his bill of exceptions, which assigns error upon the overruling of the motion, he says the jury rendered a verdict of guilty of "voluntary manslaughter." The construction thus finally placed on the verdict by the accused himself is in exact accord with the decision of this court in *Welch* v. *State,* 50 *Ga.* 128.

2. The court charged as follows, on the subject of the impeachment of witnesses: "Under the law of this State, there are three ways of impeaching a witness. One of the ways for impeaching a witness is by disproving the facts that may be testified to by the witness. Another way is by proof of contradictory statements previously made that are material to the testimony of the witness and to the issue of the case. Whenever testimony is introduced for the purpose of impeaching a witness, then the question arises for the jury, and it is a question of fact, whether or not the witness has been impeached.

Whether or not the witness has been successfully impeached, to what extent, if any, such witness or witnesses have been impeached, is a question entirely for the jury, a question of fact that is to be determined from the testimony on that question. *Whenever a witness has been successfully impeached, you have the right to disregard the witness's testimony and exclude it entirely if you see proper to do so.* But whenever testimony is introduced for the purpose of impeaching a witness, still the jury has a right to believe such witness's testimony, if they believe the witness has testified to the truth. *If you believe the testimony of a witness is true, you have the right to believe it.* In passing upon that question, gentlemen, should you find any testimony offered in this case, offered for the purpose of impeaching a witness, then you are to inquire and see whether the testimony of such witness has been corroborated, and if corroborated, whether it is corroborated in a material or immaterial part, and the weight and credit to be given to the witness or any witness in the case is a matter entirely for the jury." In the motion for a new trial error is assigned upon the two sentences of the charge which we have italicized, the second being copied immediately after the first, with nothing to indicate that there was any intervening language. As will be readily seen, the omitted sentence had a vital bearing upon the subject which the court was presenting to the jury. The obvious and proper purpose of the judge in using the words thus left out of the motion was to allow the jury to determine the question whether or not any witness sought to be impeached had been in fact impeached; that is, actually rendered unworthy of credit. If there could possibly be a doubt that this was the judge's purpose, a reading of the entire extract which we have made from the charge will certainly remove it.

The portions of the charge set forth in the motion in the manner we have pointed out, and which it is needless to say we do not approve, are alleged to be erroneous, "because if a witness be successfully impeached and not corroborated, such witness is unworthy of credit and it is the jury's duty to disregard such testimony." Taking the two sentences by themselves, they might convey the idea that it was the right of the

jury to believe an uncorroborated witness who had been shown to be totally unworthy of belief; but taking the language excepted to in connection with all the judge said on this subject, no such idea could be derived. So the criticism upon the charge is neither fair nor well founded. If the real meaning of the charge was that ascribed to it, we would pronounce it erroneous.

It is surprising that so much confusion should have arisen over a matter apparently so simple as the true rule relating to the impeachment of witnesses. In *Duncan* v. *State*, 97 *Ga.* 181, the writer undertook to throw some light on this subject, and in *Powell* v. *State*, 101 *Ga.* 19, 20, 21, 22, Mr. Justice Little discussed it ably, satisfactorily, and convincingly. His definition of an impeached witness is concise, but strong and lucid. It is: "When a witness is impeached, his unworthiness of credit is absolutely established in the mind of the jury." He here used the word "impeached" in its proper signification. Can any one with good reason assert that such a witness ought to be believed when his testimony is uncorroborated, or that a judge would be right in instructing a jury to this effect? Surely not. It can not matter by which of the legal methods the impeachment is accomplished, if it is effectual and complete. If it absolutely establishes to the satisfaction of the jury that the witness is unworthy of credit, they ought to disregard his testimony, unless it is corroborated. It is, of course, always a matter for them to determine whether any witness is really impeached; that is, completely broken down as to credibility; and until this point is reached, they may or may not believe him, as they see proper. As remarked by Mr. Justice Lewis in *Huff* v. *State*, 104 *Ga.* 524, "The jury have a right to believe the witness who is attacked rather than the witness brought to impeach him." He evidently used the word "impeach" here as synonymous with "attack," for he added: "Hence it does not follow that while testimony may be submitted for the purpose of impeaching a witness, his testimony is thereby necessarily destroyed."

The last sentence of section 5295 of the Civil Code is invoked to sustain the negative of the proposition that a witness impeached by proof of bad character or of contradictory state-

ments (it being understood that we here use the word "impeached" in its true sense as above pointed out) ought never to be believed without corroboration. That sentence reads as follows: "It is for the jury to determine the credit to be given his testimony where impeached for general bad character or for contradictory statements out of court." We do not, of course, undertake to say that this is not the law. We know it is, for the section has the force of a statute and is binding as such. The only thing to do is to ascertain what the language just quoted really means, and then enforce it. The whole question turns upon the meaning of the word "impeached" as employed in this section. We are confident that it was in this place used in the sense of "attacked," or "sought to be impeached." By giving it this signification, all difficulty vanishes and the well-reasoned doctrine of the *Powell* case stands intact and unimpaired. The word "impeached" has often been used in this sense, and it seems quite natural that it should have been so used in this particular instance. Thus treating it, the law will have just such a wise and proper operation as we may well believe the codifiers and the General Assembly intended; but if we give to this word in this section its technically correct signification, it would follow that the distinguished lawyers who last revised the code, and our lawmakers, deliberately declared that a jury might capriciously believe, without corroboration, a witness whose "unworthiness of credit" had been "absolutely established" in their minds. We find ourselves unable to reach such a conclusion. Nor can we see how the next preceding sentence of this code section militates against what we now rule. It reads thus: "But if a witness swear willfully and knowingly falsely, his testimony ought to be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence." That a jury ought to disregard entirely the uncorroborated testimony of a witness when they know that he has committed perjury, affords no help in construing the word "impeached" appearing in the next sentence. The statute does not tell us how the jury are to know that a witness has committed perjury, but we can conceive of no better way of being satisfied that a witness is capable of so doing than by

being absolutely convinced of his total unworthiness of credit. A witness shown to be capable of perjury is not, morally, the superior of a witness shown to be guilty of perjury. If, therefore, the word "impeached," in the sentence last referred to, relates to witnesses who are absolutely unworthy of belief, the two sentences are inharmonious. In one it is declared that a perjurer must not be believed unless corroborated, while the necessary meaning of the other would be that a witness capable of committing perjury may be believed without corroboration. But all this trouble instantly disappears if we give to the word "impeached" in this last sentence the meaning for which we have herein contended. In the recent case of *Mitchell* v. *State*, 110 *Ga.*, the writer, for two reasons, purposely refrained from elaborating our views as to the construction which should be placed upon this word as used in the sentence just mentioned; 1st, because our present question was not directly made in that case, and 2d, because the trial judge, taking as a whole his instructions on the subject of impeachment, evidently understood this word as there employed to mean what we now hold it does mean.

3. We grant a new trial in this case on the ground which we will now discuss. The accused set up as his sole defense that the homicide was accidental, and he supported it by sworn testimony and by his statement. The judge gave to the jury an elaborate charge, every word of which, down to the very last of it, was adapted to a case of intentional killing. He did not, till just about to conclude his instructions, remotely allude to the defense relied upon. Just as he was about to finish, he told the jury in a single sentence that if the killing was accidental, the accused would not be guilty of any offense, and added: "I see I have got that noted here, but in my charge I did not think to call your attention to it." This was almost saying to the jury that the judge thought there was very little in the defendant's contention that the killing was the result of an accident. It was really more harmful to the accused than not to mention his defense at all. He was entitled to have it fully and fairly submitted to the jury at the proper time and in the proper connection, and not in a manner calculated to

impress them with the idea that the judge scarcely deemed it worthy to be mentioned. In a note entered upon the motion for a new trial, his honor certifies, in this connection: "At the close of the charge, which was quite lengthy, I examined my notes and found that I had failed to charge on the accidental theory. The remark complained of was made for the purpose of impressing upon the jury that I did intend to instruct them on that theory and had overlooked it." We do not see how this statement helps the matter. It simply shows that the judge attached so little importance to the "accidental theory" he almost forgot to mention it although he had made a written note of it, and it is not to be supposed that the jury lost sight of a thing of this much consequence. The only defense of the accused, which, we repeat, was supported by evidence and by his statement, was worse than ignored. It was chilled by judicial oversight or blighted by implied judicial disapproval.

*Judgment reversed. All the Justices concurring. Little, J., concurring specially.*