## ROUSE *v.* THE STATE.

1. The charges referred to in the first division of the opinion were not subject to the criticisms made thereof.
2. The provisions of the Penal Code relating to the right of one to kill another to prevent the latter from forcibly attacking or invading the property or habitation of the former, or entering such habitation under certain circumstances, were not applicable, under the evidence in this case.
3. Neither the evidence nor the defendant's statement authorized the court to charge the provisions of Penal Code (1910), § 1017, relating to the necessity of corroboration in felony cases where the only witness to establish a fact is an accomplice, and the court did not err in failing to give this section in charge.
4. There was no error in any of the charges relating to the impeachment of witnesses.
5. It is not error for the court to shape his general charge with reference to the evidence, where the court charges the section of the code in regard to the statement made by the defendant.
6. "It is the province of the court to construe the law applicable in the trial of a criminal case, and of the jury to apply the law so construed to the facts in evidence. While the impaneled jurors are made absolutely and exclusively judges of the facts in the case, they are, in this sense only, judges of the law."
7. There was no abuse of discretion in refusing to declare a mistrial. The evidence supported the verdict.

JUNE 13, 1911.

Indictment for murder. Before Judge Frank Park. Worth superior court. January 7, 1911.

*Jesse W. Walters & Son, Perry, Foy & Monk, Julian B. Williamson,* and *John R. Cooper,* for plaintiff in error.

*Hewlette A. Hall, attorney-general,* and *William E. Wooten, solicitor-general,* by *Frank A. Hooper,* contra.

HOLDEN, J. The defendant, William Rouse, was placed on trial at the October term, 1910, of the superior court of Worth county, on the charge of having murdered one William Bailey. He was convicted by the jury of murder, without recommendation, and sentenced to be hung. To the order of the court, denying his motion for a new trial, he excepted. The killing occurred on September 4, 1909. On that day the defendant and the deceased rode together in a buggy from Sylvester to Poulan, the deceased having been informed by the defendant that he could obtain some whisky at the latter place. The only eye-witness to the killing was one Dink Smith. This witness swore that at a place known in Poulan as Sandy Bottom he first saw the defendant and the de-

ceased, and all three of them went into a store there and took a drink of whisky and were then invited by the defendant to go to his house and get another drink. They proceeded to the house occupied by the defendant, and entered the room thereof in which the killing occurred. The immediate circumstances attending the killing were detailed by the witness as follows: "We went in the front door, in the room on the right as you go in. Mr. Rouse then got a bottle of whisky, and we all went to take a drink, and Mr. Bailey said he couldn't take a drink without water, and he goes out around the house to get a drink of water, and he comes back in the back hall door and set down in a chair in the room. Rouse did not say anything, that I know of, when Bailey went out. . . Bailey came back in the house after he went after water; he came in and set down in the room where he was killed. He came in and set down in the chair, and we all went to take a drink, and Rouse drank, and I drank and handed it to Bailey, and he drank, and he set the bottle down on the right hand side, and he stooped over to set the bottle down. Mr. Rouse pulled a pistol from his right hip-pocket and began shooting; then he fell forward toward the bed, and Mr. Rouse shot him; and after he had fell forwards on his face, he shot him in the back. Mr. Rouse after he had finished shooting him, he pulls a small pistol out of his bosom and placed it in his hand. That small pistol he placed in Mr. Bailey's hand, he fired this pistol off in the fireplace before he placed it in his hand." The defendant then told Smith to go get the marshal and tell him that the defendant had killed Bailey, which he did. Witness did not know what took place after he left the house. On his return after going after the marshal, the defendant told him that when he left Sylvester with Bailey he carried him off for the purpose of killing him. This witness further testified that there were no cross words between the defendant and the deceased, and that the deceased did nothing to the defendant that the witness knew of. The State also sought to establish the theory that Bailey was not immediately killed by the bullet wounds inflicted upon him, but that the defendant, who had gone out of the house when Smith went after the marshal, returned and while alone with Bailey (whom witnesses testified they could hear groaning at the time of Rouse's return to the house), with a knife or other sharp instrument, so

cut the throat of the deceased as to render speech on his part impossible. Dr. Lunsford, sworn by the State, testified at length as to the character of the wounds on the body of the deceased, giving it as his opinion that the mortal wound was the one in the throat, which he testified was caused by a knife or other sharp instrument. In his statement to the jury, the defendant's version of the killing was substantially as follows: When he, the deceased, and Dink Smith got into the defendant's house, the deceased proposed to take a drink and said he would have to have some water. Defendant stepped to the edge of the door and handed deceased a dipper, and returned into the house and commenced writing a note which he had promised to write for the deceased to take to a woman. Deceased returned with a tin bucket of water. "He took a drink and set the bottle down and took the cup and took some water, and he says, 'Now, by God, treat me right about that thing.' I says, 'I don't want to do anything else with you but treat you right.' He says, 'It will be more than you did heretofore;' he says, 'I mean for you to treat me right,' and mentioned some old things between us. I says, 'You are mistaken; I don't wan't to appear against you in court, nor say anything against you unless I am called without any choice of it.' He says, 'You are a pretty good hand to swear lies against a man,' with an oath to it; and as he said it he brought his pistol out of his shirt, and I stepped out and stepped towards him, and he stepped towards, and as he come around I fired with my left hand on his wrist, that way [indicating], and as I did the pistol went off; that hole they were talking about being in the south side of that house, the ball was shot from Bailey's pistol and went through my pants . . . and the bullet went right through these pants and into the floor, and as Bailey wrung from me to get loose I shot him through the arm and through the body, and somewhere else in the body I shot him again, and that's what's said to be the knife in the neck. Gentlemen, that was the last shot from my gun. So far as me cutting that man, or putting a knife in him, there was no knife put in that man than there is in one of your jurors." The witness Smith was arrested along with the defendant. This witness was present at the coroner's inquest, and made a statement regarding the killing, which corroborated the defendant's contention as to how it occurred. Afterwards, while in jail, this witness gave in a

written statement a different version, and on the stand, at the trial, detailed it as above set forth. On the trial he stated that his testimony given at the inquest was false, and that he so testified because the defendant threatened to kill him, or to have some of his friends do so, if the witness did not tell the story the way the defendant wanted it told. While the motion for a new trial, as amended, contains a number of assignments of error, only one of them relates to alleged error in the admission or rejection of testimony; and we deem it unnecessary to relate the testimony more extensively that has been hereinbefore set forth.

1. In several grounds of the motion for a new trial complaint is made that the court erred in so charging the jury as erroneously to lead them to believe that if the "words, threats, menaces, or contemptuous gestures" of Bailey, the decedent, at the time of the homicide were sufficient to excite the fears of a reasonable man that he was manifestly intending or endeavoring by violence or surprise to commit a felony on Rouse, the defendant, and the latter, acting under the influence of those fears, killed Bailey, the homicide would not be justified. The defendant contends that the charges excepted to constitute error requiring a new trial, under the ruling in the case of *Cumming* v. *State,* 99 *Ga.* 662 (27 S. E. 177), where it was held: "In the present case it was error to charge: 'A fear growing out of and only supported by mere words, threats, menaces, or contemptuous gestures, is not the fear which would justify or excuse another for committing a homicide.'" Similar rulings were made in the cases of *Clay* v. *State,* 124 *Ga.* 795 (53 S. E. 179), and *Johnson* v. *State,* 105 *Ga.* 665 (31 S. E. 399). We do not think the charges excepted to subject to the criticism presented. One of the court's instructions excepted to is as follows: "Provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder." The charge above quoted is a part of the Penal Code (1910), § 65, wherein voluntary manslaughter is defined, and is taken from that portion of the court's instructions wherein he gave this section in charge to the jury. No complaint is made that the law of voluntary manslaughter was not applicable under the testimony, or that the court erred in instructing the jury upon the law of this grade of homicide. If it was proper to charge the jury upon the subject

of voluntary manslaughter, it was certainly not error to charge the precise language of the code defining this offense. The above-quoted language in the section referred to means that though "words, threats, menaces, or contemptuous gestures" of the decedent may arouse in the slayer a passion by reason of which he kills the decedent, a homicide because of the passion thus engendered will not be reduced from murder to manslaughter. In the charges complained of, the court was dealing with this principle of law, and the language used by him was not such as to deprive the defendant of the benefit of his defense that in committing the homicide he acted under the fears of a reasonable man, nor to exclude the jury from considering, in determining whether or not he so acted, whether words, threats, menaces, or contemptuous gestures on the part of the deceased occurred under such circumstances as would justify the excitement of such fears on the part of a reasonable man. On the contrary, the jury were in-structed, in one portion of the charge, "You will bear in mind that in every case of homicide where it appears that the circumstances were sufficient to excite the fears of a reasonable man that the deceased was intending or endeavoring by violence or surprise to commit a felony on him and that the party killing really acted under the influence of those fears and not in a spirit of revenge, that the homicide is justifiable," and substantially repeated this instruction in several other portions of the charge. In view of the entire charge, the instructions above referred to as being complained of were not such as to mislead the jury into the belief that the law was other than that laid down in the cases above cited, and were not subject to any of the exceptions thereto.

2. Complaint is made that the court failed to charge the provisions of the Penal Code (1910), § 72, relating to the right of one person to kill another to prevent the latter from forcibly attacking and invading property or habitation of the former, after using persuasion, remonstrance, or other gentle measures; and in so charging the jury as to exclude from their consideration the defense involved in the latter part of Penal Code (1910), § 70, providing that it shall be justifiable homicide for a person to kill "any persons who manifestly intend and endeavor, in a riotous and tumultuous manner, to enter the habitation of another for the purpose of assaulting or offering personal violence to any person

dwelling or being therein." The defenses above referred to were not involved in the case, and there is no merit in. either of the complaints to which reference is above made.

3. Complaint is made that the court committed error in failing to charge Penal Code (1910), § 1017, relating to the necessity of corroboration in felony cases where the only witness to establish a fact is an accomplice. Neither in the evidence nor in the defendant's statement was there anything to show that the witness Dink Smith, on whom the State mainly relied to establish the killing of Rouse, was an accomplice in the commission of the homicide, and the court committed no error in failing to charge the section of the code above mentioned.

4. One ground of the motion for a new trial is as follows: "Because the court erred in charging the jury as follows: 'When an apparent discrepancy exists between the testimony of different witnesses, it is the duty of the jury to reconcile the whole together, if it can be done, so as not to impute perjury to any one. There are several methods prescribed by our law by which a witness may be impeached, and one is by disproving the facts testified to by him; another is by proof of contradictory statements previously made by him as to matters relevant to his testimony and to the case; and still another is by evidence as to his general bad character. The credibility of a witness is a matter to be determined by the jury under proper instructions by the court. When an attempt to impeach a witness in any of the methods pointed out has been made, it is for the jury to say whether such attempt has been successful, and when a witness has been successfully contradicted as to material matter, his credit as to other matters is for the jury.' Defendant excepts to this charge and says the same is error, because when a witness has been successfully impeached by contradictory statements, it is the duty of the jury to disregard his testimony altogether. So that it was error for the court to charge the jury when the witness has been successfully contradicted as to material matter, his credit as to other matters is for the jury. Defendant contends it was also error for the court to instruct the jury that it was their duty to believe a witness as to other matters, who had been impeached by some of these designated methods, there being other legal ways in which a witness may be discredited. For instance, a jury may take into consideration the witness's

feelings or prejudices against the defendant, the reasonableness or unreasonableness of his tale, his manner of testifying, and many other things may be considered by the jury in passing upon his credibility." Another ground of the motion for a new trial is as follows: "Because the court erred in charging the jury as follows: 'While it is for the jury to determine the credit to be given the testimony of each and every witness, yet when a witness has been successfully impeached as to absolutely establish in the minds of the jury his unworthiness of credit, as well as where a witness swears wilfully and knowingly falsely, his testimony in each and both of these cases ought to be disregarded, unless corroborated by circumstances, or other unimpeached evidence.' Defendant contends that the court erred in instructing the jury that if the witness had been successfully impeached, his testimony would not be taken by the jury, unless corroborated by circumstances or unimpeached evidence. The defendant contends that this charge was error further, because when a witness has been successfully impeached it is the duty of the jury to disregard all of his testimony and pay no attention to it and not to consider it at all." The charges above quoted do not furnish any ground for a new trial. The charge that a witness may be impeached in one of the three ways named in the charge excepted to (first above quoted) is not cause for a new trial, though a witness may be discredited in other legal ways besides those designated in the charge. The court did not instruct the jury that a witness must be believed unless impeached in one of the three ways named in the charge to which reference is made; and immediately preceding the portion of the charge referred to, the court instructed the jury as follows: "To enable you, in considering the evidence, to separate the false from the true, you are made by law the exclusive judges not only of the evidence and the weight of the evidence, but also of the credibility of the witnesses. In determining what degree of credit a witness should have, the jury should bring to bear their own intelligent judgment and use such reasonable standards as they would apply in seeking for truth in such matters of importance where their own interests are concerned. Among other things, the jury may look to and consider any interest which a witness may have in the case on trial, whether he manifests any bias or prejudice for or against the accused; you may look to his man-

ner of testifying, to the reasonableness or unreasonableness of the facts he relates, and apply such other mental tests in weighing the evidence as your reason and judgment dictate." See, in this connection, *Chapman* v. *State,* 109 *Ga.* 157 (3), 162 (34 S. E. 369); *Southwestern R. Co.* v. *Allen,* 130 *Ga.* 656 (5), 660 (61 S. E. 541). The portions of the charge excepted to, other than the one just commented on, were in substantial accord with the provisions of the Penal Code relating to the impeachment of witnesses, and the Civil Code (1910), § 5884, which does not appear in the Penal Code, but which is applicable upon the trial of criminal cases as well as civil cases. See, in this connection, *Humphreys* v. *State,* 133 *Ga.* 456 (66 S. E. 158); *Grant* v. *State,* 118 *Ga.* 804 (45 S. E. 603); *Arnold* v. *State,* 131 *Ga.* 494, 497 (62 S. E. 806); *Smith* v. *State,* 109 *Ga.* 479 (35 S. E. 59).

5. One ground of the motion for a new trial is as follows: "Because the court erred in charging the jury as follows: 'A reasonable doubt of the law is one that grows out of the evidence, or arises from the lack of evidence adduced upon the trial; and leaves a reasonable mind wavering and unsettled—not satisfied from the evidence. A juror can not create for himself a doubt and act upon it. He can not raise an artificial or captious doubt in order to acquit. The doubt should be real and honestly and fairly entertained after all reasonable effort to find out the facts. The responsibility of discovering the truth in relation to the charge made against the defendant from the evidence rests upon you, and you alone, under your oaths to render a true verdict according to the evidence. It is only that character of verdict which protects the person on trial on the one hand and preserves society and compels men to respect the law on the other. A verdict rendered on any other consideration is but a mockery of justice.' Defendant excepts to this charge, for the reason that it restricted the jury to find their verdict from the evidence and excluded from their consideration the defendant's statement. The error is that the court omitted to tell the jury in this connection that if they had reasonable doubt about the defendant's guilt from his statement, it would be their duty to acquit him. The court, defendant contends, nowhere in its charge instructed the jury to this effect." Another ground of the motion for a new trial is as follows: "Because the court erred in charging the jury as follows:

'While I have told you that in order for your verdict to be a legal and proper one, it must be founded on the evidence in the case, yet, in this connection, I give to you another rule, which may or may not, as you must determine, affect your finding: In all criminal trials the prisoner shall have the right to make to the court and jury such statement in the case as he may deem proper in his defense. It is not to be made under oath, and it shall have such force only as the jury may think right to give it. The jury may believe it in preference to the sworn testimony in the case.' Defendant excepts to this charge, because the court did not instruct the jury that if they had any reasonable doubt as to the defendant's guilt, either from the evidence or the defendant's statement, they ought to give the prisoner the benefit of the doubt and acquit him. Defendant contends that nowhere in the charge did the court instruct the jury that if they had any reasonable doubt about the defendant's guilt they ought to acquit him, but restricted the jury to base their verdict upon the evidence and that if they had any reasonable doubt they should acquit. For these reasons the defendant assigns this charge as error." On similar grounds the following charge is excepted to: "Now, understanding as you do your responsibility in this case, the obligation under which you rest to discharge your duty in an impartial, unbiased and unprejudicial manner, to find a verdict according to truth of the case as disclosed by the evidence, after applying the evidence to the rules of law as I give them to you, I now call your careful and intelligent consideration to the law of murder, the law of justifiable homicide, and along with them the law of voluntary manslaughter." We do not think there is any error in the charges quoted, requiring a new trial. In *Tolbirt* v. *State*, 124 *Ga.* 767 (2), 770 (53 S. E. 327), it was ruled: "It is proper for the judge to frame his general charge to the jury upon the evidence alone, appropriately instructing them, however, at some stage thereof, with respect to the prisoner's statement." Also, in this connection, see *Tucker* v. *State*, 133 *Ga.* 470 (5), (66 S. E. 250); *Brantley* v. *State*, 133 *Ga.* 264 (65 S. E. 426); *Jordan* v. *State*, 130 *Ga.* 406 (2), 407 (60 S. E. 1063); *Walker* v. *State*, 118 *Ga.* 34 (44 S. E. 850).

6. Exception is taken to a charge wherein the court stated: "In deciding this question you will remember that you are the sole judges of the evidence submitted to you during the trial of

this case; you will accept as correct, for your guidance in making up your verdict, the law as I shall give it to you in charge. So that, having applied the law to the evidence as you shall find it to be, you may render such verdict as the law demands at your hands. You are not at liberty, in determining your verdict, to depart from the evidence nor the law as given in charge." Exception is taken to this charge on the ground that in criminal cases the juries are the judges of the law as well as the facts, and that "they become the final judges of the law and the evidence," and that it was error for the court to tell the jury "that they were the sole judges of the evidence, without telling them they would become the judges of the law also." There is no merit in this exception. The jury must accept as the law what the court charges them as being the law. In this connection, see *Berry* v. *State,* 105 *Ga.* 683 (31 S. E. 502); *Johnson* v. *State,* 118 *Ga.* 780, 782 (45 S. E. 604).

7. One ground of the motion for a new trial is as follows: "Because the court committed error in admitting the following testimony of the State's witness by the name of Dink Smith, over objection of defendant's counsel: 'I do not go out at night at all, and I stay close at home. I left this country and went to my father's to keep from being killed by some of Rouse's friends like he told me.' Defendant's counsel objected to this testimony and asked the court to rule it out, on the ground of its irrelevancy, and on the further grounds that no substantial reason was given by the witness for being in fear of the defendant after he was turned out of jail. Defendant objected to the testimony further, for the reason that the defendant could not harm him, as he had been in jail at the time, and if other people were threatening his life outside, he could not be held responsible for it. And any threats made by any one outside of the prisoner at the bar against this man's life would not be admissible." The testimony discloses the following facts: Rouse killed Bailey on Saturday, and on Sunday Rouse and witness Dink Smith were arrested and incarcerated in the same cell in jail. On Monday morning Smith was removed from this to another cell, where he remained for a short time, after which he was released from custody. On cross-examination of the witness Smith, counsel for the defendant brought out from him the following testimony: "I have been out

of jail about eight months. Nobody ain't bothered me. I went
up home and stayed four or five months, and came back down here
I think the 12th of August. I moved right back to Poulan and
moved in the house that Rouse killed Bailey in, and I have been
living in it ever since. I haven't had any cause to go all over the
country. I have been in Poulan working around. I have been every-
where I have had any necessity to go. I will be 27 years old the
24th day of January." Immediately after this testimony was de-
livered, counsel for the State, on re-direct examination of the wit-
ness Smith, brought out the testimony objected to in the ground
of the motion for a new trial above quoted. Counsel for the de-
fendant, on recross-examination of the witness, immediately there-
after brought out the following testimony: "I was afraid of Mr.
Rouse's friends; he told me if he didn't kill me himself, he had
friends in that county who would. . . I got out of jail on Sun-
day and went home on Monday on the 11 o'clock train, up to
Andersonville. I got out of jail after the case was tried. My
family went with me, and I moved back here on the 12th of Au-
gust. I wasn't afraid to come back; if I had been afraid at the
time, I wouldn't have come back. I came back after I had testi-
fied against Rouse. I am afraid to be out at night." It does not
distinctly appear from the testimony where was the home of the
father of the witness to which, in the testimony objected to, the
witness said he went; but in view of all the testimony, we think it
proper to consider that it was at Andersonville in another county
and was "the home" referred to in the testimony first above
quoted. Counsel for the defendant having brought out from the
witness the fact that he went to the home of his father and stayed
four or five months after being released from jail, we do not think
the admission of the testimony of the witness as to the reasons why
he went to the home of his father, over the objection that it was
irrelevant, cause for a new trial. We think this testimony was
relevant. Nor do we think the testimony that the witness left
the county of Worth and went to the home of his father "to keep
from being killed by some of Rouse's friends like he told me,"
subject to the other objections contained in the above-quoted ground
of the motion for a new trial. The witness Smith testified that
after the killing Rouse several times told him that if he did not
relate the occurrence as happening in a certain way, if he (the de-

fendant) did not kill Smith, his friends would. There was no testimony that any of the friends of Rouse had made any threats against Smith. The last sentence in the testimony objected to was admissible and not subject to any of the grounds of objection made thereto; and even if the first sentence in the testimony objected to was subject to any of the objections made in the ground above quoted, objection to the testimony as a whole would not be sustainable. The objections made in the ground of the motion for a new trial which we are considering were to all of the testimony therein quoted, and were not to any special portion thereof. However, we think the testimony in the sentence above referred to, that "I do not go out at night at all, and I stay close at home," was admissible in view of the fact that counsel for the defendant had previously brought out, on cross-examination of Smith, the testimony that "I have been everywhere I have had any necessity to go."

One ground of the motion complains that the court committed error in refusing to grant a mistrial after the solicitor-general used the following language in his closing argument to the jury: "Rouse came out of the house wiping his hands, and immediately jumped into his buggy and rushed off down to the house of this negro woman, evidently his concubine, and then rushed back." When the motion was made, the solicitor-general stated to the court and jury as follows: "There was evidence in this case that he [the defendant] either stayed there or ate there; I forget which it was; but in the heat of my argument I did go too far in referring to that particular woman as being evidently his concubine, and I desire to withdraw that." Whereupon the court instructed the jury as follows: "I charge the jury that they are to be actuated and governed solely by the evidence in this case and the law as given in charge, and are not to consider any statements made by counsel in their zeal or otherwise that do not appear in the evidence in this case. You will be governed by the evidence as you were sworn to do in being empaneled, and not by any statements counsel may make outside of the evidence. I especially warn you against considering any statements of counsel, not borne out by the evidence." The defendant then renewed his motion to declare a mistrial, and the court made the following statement: "I have instructed the jury, who are presumed to be upright and in-

telligent men, and who will remember the testimony and be guided by the testimony alone. The motion is overruled." All of what has been above stated transpired in the presence of the jury. Civil Code (1910), § 4957, is as follows: "Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same; and, on objection made, he shall also rebuke the same, and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the plaintiff's attorney is the offender." Under the circumstances as above set forth, it was a matter in the discretion of the court whether or not to declare a mistrial, and the failure to do so was not an abuse of discretion requiring a reversal. The cases cited by counsel for the defendant to sustain their contention that the failure to declare a mistrial was error show, upon examination, that none of them involved instances in which the court promptly and fully complied with the requirements of the section of the code above set forth. The record shows that the judge and the solicitor-general did their utmost to wipe from the minds of the jurors any impressions created by the statement of the solicitor-general which were liable to harm the defendant. If the statement was unwarranted by the evidence, there was no abuse of discretion in refusing the motion to declare a mistrial.

Counsel for the defendant contend that the venue was not shown. The evidence of the witness Smith shows that the homicide was committed in Worth county, and there is no merit in this contention. This is the second time that the defendant has been convicted of the crime charged against him, without recommendation, and sentenced to be hung. This court granted him a new trial when the case was formerly before it (135 *Ga.* 227, 69 S. E. 180), because of an error in the charge of the court. The testimony introduced by the State shows an unprovoked murder. It is true that the only witness who saw the homicide committed swore before the coroner's jury that it occurred in a way tending to justify the defendant in its commission. But this witness says that the testimony then given was false, and was given because of repeated threats made by the defendant that if the witness did not testify in the way he did before the coroner's jury, the defendant or his

friends would kill him. The jury trying the case had a right to believe the witness's testimony as delivered on the trial. Moreover, there was testimony that after shots were heard in the house by parties on the outside, groans were heard, and that while they continued Rouse returned alone to the house where the homicide occurred, shortly after which the groans ceased. A physician testified that the wound in the neck was made by a knife, or other sharp instrument, which cut the trachea and inflicted a mortal wound, and rendered speech impossible, and that, after this wound was inflicted, it would have been impossible for the deceased to have uttered groans of the character described by the witnesses. The evidence was sufficient to warrant the verdict.

*Judgment affirmed. All the Justices concur.*