## MORTON *v.* THE STATE.

No. 13287. September 25, 1940.

*W. D. Lanier* and *Max Rubenstein*, for plaintiff in error.

*Ellis G. Arnall, attorney-general, W. H. Lanier, solicitor-general, Roy V. Harris, N. J. Smith, E. J. Clower* and *C. E. Gregory Jr., assistant attorneys-general,* contra.

JENKINS, Justice. 1. "An arrest for a crime may be made by an officer, either under a warrant, or without a warrant if the offense is committed in his presence, or the offender is edeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant." Code, § 27-207. See *Howell* v. *State,* 162 *Ga.* 14 (6-*a*) (134 S. E. 59) ; *Thompson* v. *State,* 4 *Ga. App.* 649, 652 (66 S. E. 99).

(*a*) It is the duty of an officer, when authorized to arrest, but where the circumstances afford reason to believe that his object and official character are unknown to the person whom he seeks to arrest, so to inform him (*Douglass* v. *State,* 152 *Ga.* 379 (3), 110 S. E. 168) ; but an omission to do so will not justify the person arrested, or sought to be arrested, in resisting the arrest if he in fact already knows, or on reasonable and probable grounds believes, that he is under a charge of felony for which an arrest is being attempted. *Robinson* v. *State,* 93 *Ga.* 77 (3) (18 S. E. 1018, 14 Am. St. R. 127). Belief or reasonable grounds of belief on the part of such an offender would be equivalent to knowledge. *Croom* v. *State,* 85 *Ga.* 718, 723 (11 S. E. 1035, 21 Am. St. R. 179). Where an offender thus has the equivalent of knowledge that the person making the arrest is an arresting officer, it is the duty of such person to submit quietly to arrest; and in case he refuses to submit, the officer has the right to use such force as is reasonably necessary to accomplish the arrest. *Dixon* v. *State,* 12 *Ga. App.* 17 (6) (76 S. E. 794) ; *Moody* v. *State,* 120 *Ga.* 868 (2), 869 (48 S. E. 340) ; *Newkirk* v. *State,* 57 *Ga. App.* 803, 807 (196 S. E. 911), and cit. To slay an officer to avoid being taken into custody, while having such reasonable grounds of belief that he is an arresting officer, and that his object is to make a lawful arrest for a felony, is murder. If the homicide is committed without reasonable cause to know his official character or purpose, and without malice, it is manslaughter. *Croom* v. *State,* supra.

(*b*) It was shown by one of the defendant's companions that

at the time of the homicide he and the defendant were "at that still . . operating it, stilling liquor" on the night in question. This witness testified: "LeRoy [the defendant] had a still . . [he] came with me down there. When we first came there we went there to Nath's house. . ·. Nath did tell us something about the still, he said he heard they had found it. . . We had to be in a hurry to get through with it. We thought the quicker we got through with it the better it would be for us. . . We come down and found the mash ready to run. We just spoke to Nath, and he told us he heard they had found it, and we wanted to run it off quick before the law got there that night; if they was coming in there, we wanted to get through." He later testified: "When he [the defendant] come out from his house, he wrapped up something in a paper. He had a gun in the paper; it was a pistol." In his statement to the jury the defendant admitted the possession of a pistol at the time of the homicide, the previous conversation with another person as to the tearing up of the still, his presence at the still with companions, and finding "everything was there just like we left it." Applying to this evidence the preceding rules of law, the jury were authorized to find that the deceased officer was empowered to make an arrest of the defendant at the time and place of the homicide; and that under the circumstances shown on the night of the homicide the defendant was then and there actually anticipating arrest, and had reasonable ground to believe that the decedent was acting in his capacity as an officer for that purpose.

(c) The instructions to the jury as to the respective duties and rights of the deceased as an arresting officer, and of the defendant in submitting to arrest or resisting, were in essential accord with the preceding legal rules, and were not contrary to such rules or argumentative, on the grounds contended.

(d) The court did not err in refusing the defendant's requests to charge as to such respective duties and rights of the deceased officer and of the defendant, since the principles stated, so far as they conformed to the preceding legal rules, and so far as they were applicable to the case, were correctly and sufficiently covered by the general charge. This ruling being controlling, it is unnecessary to determine whether or not the judge was authorized to refuse to charge a group of numbered propositions as requested en bloc, where only one request to charge preceded the entire group,

and where some of the requested propositions, as shown in the statement of facts, were inaccurate. See *Burkhalter* v. *Wilson,* 168 *Ga.* 566 (148 S. E. 399), and cit.

2. There is no merit in the exception that, while the defendant was present, his counsel were absent when the jury returned their verdict, where it appears that after the jury had been charged and had retired at the noon hour, a recess was taken to a certain time after dinner, which was stated in the presence of counsel; that when the jury returned while court was sitting, counsel were absent near by; that the court directed an officer to endeavor to locate and have counsel present, and when they did not appear "the court had the defendant brought inside the bar and in regular and lawful form polled the jury, and then declared and published the verdict;" and that an insistence on such a poll was all that counsel could have done had they been present and not waived it. *O'Bannon* v. *State,* 76 *Ga.* 29 (2), 31; *Baldwin* v. *State,* 138 *Ga.* 349, 350 (75 S. E. 324); *Richards* v. *State,* 136 *Ga.* 67 (2) (70 S. E. 868); *Roberson* v. *State,* 135 *Ga.* 654 (2), 655 (70 S. E. 175).

3. The use of the word "ideal" in a general instruction as to the duty of the jurors in considering the case and ascertaining the truth, that "it is an *ideal* that your minds should be like that piece of paper when you come into the jury-box, upon which neither passion nor prejudice nor bias nor partiality has been able to write anything whatever," was not erroneous, on the objection that this word meant "visionary," "phantasm," or a "fanciful standard," without "real existence," since one of the defined and generally understood meanings of the word is "a standard of perfection, beauty, or moral or physical excellence" (Webster's New International Dictionary); and in no event could the quoted use of the word have misled the jury to the prejudice of the defendant.

4. In the trial of a criminal case, even one where the defendant has not admitted his guilt but the question of his guilt or innocence is in issue, where a relevant fact, other than the essential one of guilt or innocence, has been established by uncontradicted evidence, and the defendant in his statement to the jury does not deny such fact but in effect admits it to be true, it is not error for the judge to assume or intimate to the jury that such fact is true. See *Pruitt* v. *State,* 36 *Ga. App.* 736 (138 S. E. 251), and cit. Accordingly, since the defendant himself in effect admitted that he

802

was engaged in the operation of an illegal still at the time and place of the homicide, and since such fact was proved by the uncontradicted testimony of witnesses, the court did not err in assuming that the deceased officer, accompanied by another deputy sheriff, went in the nighttime to "a still" which was "being operated," and that "admittedly they had no warrant at all for the arrest of this or the other parties engaged in the distillation or manufacture of liquor."

5. The instructions on voluntary manslaughter, as set forth in the statement of facts, being adapted to the testimony and to the defendant's contentions in his statement, and substantially covering without material inaccuracy all of the essential principles of the Code, § 26-1007, relating to such a homicide, the court did not err in so charging, or in refusing to charge in the exact language of the Code and as requested.

6. With respect to the contention of self-defense, the principles of the Code, §§ 26-1011 and 26-1012, relating to justifiable homicide and the necessity of showing "the fears of a reasonable man" on the part of the defendant, were given and defined with essential accuracy. The court did not err in charging that "the danger must be pressing and urgent or apparently so, and the means to carry out the injury that the party feared was at hand." *Wheeler* v. *State,* 179 *Ga.* 287 (5), 289 (175 S. E. 540) ; *Tolbirt* v. *State,* 124 *Ga.* 767 (4), 773 (53 S. E. 327), and cit.; *Ellison* v. *State,* 137 *Ga.* 193 (73 S. E. 255). Under the evidence for the State, it was proper to state the rule as to creating an emergency and taking advantage thereof, as applied to self-defense. See *Daniel* v. *State,* 187 *Ga.* 411, 412 (1 S. E. 2d, 6), and cit. Nor were such instructions subject to the exception that they were confusing as to the law of justifiable homicide and self-defense, and the contention of the defendant; or that they excluded from the consideration of the jury "the conduct, acts, menaces, and the contemptuous gestures of the deceased" and the other officers, even if, under the evidence and the defendant's statement, the principle was involved that "while provocation by words, threats, menaces or contemptuous gestures is not sufficient to justify the excitement of passion and reduce a homicide below the grade of murder when the killing is done, not on account of any fear in the mind of the slayer, but solely to resent the provocation given, it is nevertheless

803

true that such acts may in some instances be sufficient to arouse the fears of a reasonable man that his life is in danger, the same being a question to be determined by the jury," and that where words, threats, or contemptuous gestures may thus throw light upon that question, they should not be excluded from the consideration of the jury. *Johnson* v. *State,* 105 *Ga.* 665 (31 S. E. 399); *Cumming* v. *State,* 99 *Ga.* 662 (2), 664 (27 S. E. 177); *Clay* v. *State,* 124 *Ga.* 795, 796 (53 S. E. 179), and cit.; *Howell* v. *State,* 162 *Ga.* 14, 30 (134 S. E. 59).

7. On the remaining contentions under the general grounds, relating to the absence of malice, justification, or reduction of the homicide to voluntary manslaughter, the verdict of murder was authorized by testimony for the State, that, while the officers were approaching at night the operators of the still, who anticipated a visit from officers of the law, the defendant turned his flashlight on one of the deputies, and said, according to one witness, "Here is a man; must I shoot?" and a companion of the defendant said, "Shoot," or said, according to the testimony of another companion of the defendant, "Here a man, I'm going to shoot him," and the first mentioned companion also said, "Shoot;" and that the firing by the officers did not start until after this was done and said by the defendant and his companion.

8. The court properly refused a new trial on all the grounds of the motion.        *Judgment affirmed. All the Justices concur.*