ADAMS *et al. vs.* THE STATE OF GEORGIA.

Where one who was resisting arrest by a constable and his *posse,* was shot and killed by one of the latter, and, on a prosecution for murder, it was set up, by way of defence, that the deceased was seeking to commit a felony on the constable, or, at least, that the person who fired the shot acted under reasonable fears thereof, under the latter branch of the defence, it was not necessary to show that the killing was actually necessary to prevent the felony, but it would have been enough to have shown that the circumstances were sufficient to excite the fears of a reasonable man that it was the purpose of the deceased to perpetrate a felony upon the officer, and that the accused acted under the influence of those fears, and not in a spirit of revenge

September 11, 1883.

Criminal Law. Charge of Court. Before Judge HUTCHINS. Walton Superior Court. February Term, 1883.

Monroe Adams, Job R. Smith, Charlie Cheatham, Thomas Austin and James Austin were indicted for murder, it being alleged that they killed one Alfred T. Sims, on July 20, 1882.

On the trial, the evidence for the state was, in brief, as follows: The defendants went to the house of Sims to arrest him. Sims had previously stated that he was ready to be tried; had gone to the court-ground for that

purpose, and had but recently returned home when they arrived. A pistol shot was heard ; then some one called out to shoot, and a gun was fired. The wife of Sims, who was from twenty-five to fifty yards away, went at once to the house, and found that her husband had been shot by Adams. Smith had hold of her husband, and was pulling him around. Sims said to Smith that the latter should not have had him shot, as he was not trying to get away, or trying to shoot Smith. Smith responded, " Yes, you were." Sims said that he was a dying man; did not expect to live an hour, and would not tell a lie ; that the pistol went off in Smith's hand, after the latter took it from him; that Monroe Adams shot him. Smith said, "Monroe Adams ought not to have shot you. I did not tell him to kill." Adams said, "Yes, you did tell me to shoot, and I shot him.". Sims said to Smith, "Job, you came here to kill me; you did not come for anything else," and Smith responded, "Didn't you say you would kill me, if I came?" Sims denied having said so, and asserted that what he did say was, that if Smith or any one else came rightly, he would treat them rightly. Sims also said that he did not think that Smith had any right to run in on him and try to shoot him, after he had been arrested and been to the court-ground in the evening. Adams and Cheatham had guns, Smith had a stick. No pistol was seen, except one which Smith produced from his pocket, showing that one barrel had been fired. Sims made other statements before his death, to the effect that his pistol had fired accidentally, and that the ball would be found in the joist; and on searching, it was so found. Austin had stated in conversation, since the homicide, that Smith instructed the party, before they reached the house of Sims, to shoot; that is, if Sims resisted, to defend themselves.

The evidence on behalf of the defence showed, in brief, the following facts: Sims and one Joe Smith were on bad terms, growing out of an attempted outrage, which Sims charged that Joe Smith tried to perpetrate upon his little

girl. Joe Smith swore out a warrant for assault with intent to murder; also a peace warrant. These warrants were placed in the hands of Job R. Smith (who was a constable) for the purpose of making the arrest. Sims had announced that he was ready for trial, but that he would not be arrested, and would kill the man who tried to arrest him. His threat of violence was communicated to the constable, who was somewhat loth to undertake the arrest, but the magistrate informed him that he considered it his duty to do so. He thereupon received the warrant, and summoned the other defendants as a *posse* to aid him in making the arrest. He remarked that he thought that, by humoring Sims, he could manage him. On the way to the house of Sims, they borrowed a rifle and a shot-gun. On reaching the house, Smith instructed two of the *posse* to accompany him inside, and told the other two to go to the back door and window. Smith, accompanied by Cheatham and James Austin, entered the house. Smith looked around and said, "He ain't here." Just then Sims stepped out of the dining-room door, with his hand in his pocket. Smith bade him good evening, but he did not reply. Smith then informed him that he had come to arrest him on two warrants, stating the offences charged, and asked him if he had been arrested. He replied, that he had not, and, with an oath, that he never intended to be. Smith told him that if he would give up, he would be treated rightly, and that he (Smith) was taking no stand against him. Sims jerked out a pistol, and, with an oath, said that he would blow Smith's brains out. Smith told him not to shoot, but he leveled the pistol at Smith's head. The latter stepped forward, and tried to knock up the weapon. Sims fired, cutting a hole through the brim of Smith's hat; Smith thereupon grabbed him, and a struggle ensued. Sims pulled out another pistol, and fired a second shot. He had Smith bent over at the time. When he did this, Adams fired upon him with a shot-gun, and the two fell to the floor together. After the fall, Smith took a pistol from Sims,

which was cocked. Mrs. Sims then came into the house, and inquired who had killed her husband. Adams said he had shot him, because the latter had shot Job Smith.

. There was some other testimony tending to impeach witnesses, and relating to minor details, not material here.

The jury found the defendants, Smith and Adams, guilty of involuntary manslaughter, in the commission of a lawful act, without due caution and circumspection. They moved for a new trial on various grounds. Only one of these was considered by the Supreme Court, namely, the giving of the charge set out in the decision.

H. D. McDANIEL; J. W. ARNOLD; B. J. EDWARDS; A. S. ERWIN, for plaintiffs in error.

A. L. MITCHELL, solicitor general, by HARRISON & PEEPLES, for the state.

BLANDFORD, Justice.

The court below, among other things, charged the jury, " If you believe from the evidence, at the time of the killing, deceased, Sims, manifestly intended, by violence or surprise, to commit a felony upon the officer while engaged in the proper performance of his official duty, and the circumstances, as they appeared to Adams, were sufficient to excite the fears of a reasonable man, and that he believed that it was necessary to kill him to prevent the felony, and he acted under the influence of those fears and belief, and not in a spirit of revenge, and he killed Sims, and the killing was necessary to prevent the felony, it would be justifiable homicide." This charge would have been right and in accordance with the Code, if the court had left out the words, " and the killing was necessary to prevent the felony; " with the addition of these words, the charge was erroneous. The Code does not make it necessary, under the circumstances of a case like this, that the killing was necessary to prevent the felony; all that the Code requires is,

under circumstances like these, that the circumstances were sufficient to excite the fears of a reasonable man that it was the purpose of the deceased to perpetrate a felony upon the officer, and that the accused acted under the influence of those fears, and not in a spirit of revenge. It does not have to appear that the killing was necessary to prevent the felony, but only that the circumstances were sufficient to excite the fears of a reasonable man, and that he acted under those fears, and not in a spirit of revenge.

There were other rulings and decisions of the court excepted to in this case, which are not here considered, as they may not occur on another trial; but it must not be inferred that they are approved by this court.

Judgment reversed.