## WORLEY v. THE STATE.

1. Where, on the trial of an indictment for murder, only three questions were involved under the evidence,—whether the accused was guilty of murder, whether he was guilty of voluntary manslaughter, or whether the homicide was justifiable, it did not constitute an expression of opinion requiring a reversal that the judge instructed the jury that they could render but one of three verdicts, and gave them appropriate forms to be used, as they might find upon such issues. *Sanders* v. *State*, 113 *Ga.* 267 (38 S. E. 841); *Dotson* v. *State*, 129 *Ga.* 727 (59 S. E. 774).

2. A charge defining legal malice to be "an intent to kill a human being in a case where the law would neither justify nor in any degree excuse the intention, if the killing should take place as intended," did not require a new trial, although it would have been more apt to have used the word "mitigate" in lieu of the expression "in any degree excuse," as the word "excuse" was employed elsewhere in the charge in other senses than that of mitigation. *Mann* v. *State*, 124 *Ga.* 760 (53 S. E. 324, 4 L. R. A. (N. S.) 934).

3. It was not cause for a new trial that the court charged section 70 of the Penal Code, on the subject of justifiable homicide, omitting the concluding lines of that section, which had no application to the case, or that he failed to define the word "felony" as therein employed; at least in the absence of an appropriate written request made in due time. *Pressley* v. *State*, 132 *Ga.* 64 (63 S. E. 784); *Pickens* v. *State*, 132 *Ga.* 46 (63 S. E. 783).

4. It furnished no ground for a new trial that the court did not give in charge section 76 of the Penal Code of 1910, which declares, that, "The homicide appearing to be justifiable, the person indicted shall, upon trial, be fully acquitted and discharged," where the general charge informed the jury that the defendant could not be convicted unless proved guilty beyond a reasonable doubt, and instructed them fully as to the defense of justifiable homicide, and that the verdict might be for murder, voluntary manslaughter, or justifiable homicide, and in another place treated the verdict of not guilty as equivalent to that last mentioned. *Taylor* v. *State*, 121 *Ga.* 356 (10), (49 S. E. 303).

5. Where the judge, in defining voluntary manslaughter quoted Penal Code (1910), § 65, but did not employ the words, "of which the jury in all cases shall be the judges," with reference to cooling time, which words were added to the section, as it stood in the Penal Code of 1895, by the act of 1899, but charged fully upon the law of the case developed by the evidence, this will not require a new trial.

6. Under the evidence, there was no error in charging as to when malice may be inferred from proof of a homicide, in accordance with the ruling in *Mann* v. *State*, supra.

7. In a case where the evidence would have authorized a finding of voluntary manslaughter, under an indictment charging murder, it was error to give the following charge: "The facts and circumstances, as shown by the evidence, must have been sufficient to excite the fears of a reasonable man that . . a serious bodily injury not amounting to

a felony was about to be inflicted upon the defendant, to reduce the killing from murder to manslaughter." This mingled the law of justification with the law of voluntary manslaughter, and excluded other "equivalent circumstances" which might mitigate, under the evidence.

8. In his argument before the jury, the prosecuting attorney read to them Penal Code (1910), § 1015, and contended that it was applicable to the case. On objection, the court permitted the argument to proceed, but stated that counsel on each side must stay within the record, that each side might state its contentions, but the jury would look to the evidence for the facts and to the charge of the court for the law of the case. In his general charge he stated that the defendant entered on the trial with the presumption of innocence in his favor, that such presumption followed him throughout the entire trial unless overcome in a lawful manner, and that it was incumbent upon the State to prove the guilt of the accused beyond a reasonable doubt before the jury would be authorized to find him guilty. *Held*, that this furnished no ground for granting a new trial.

9. The court charged as follows: "In order to justify the homicide, there must be something more than a mere threat or menace; there must be an appearance of danger. The means for inflicting the threatening danger, if any, must be apparently at hand at the time, and there must be some manifestation of an intention to inflict a felonious injury presently." *Held*, that this generally followed the opinion in *Cumming* v. *State*, 99 *Ga.* 662 (27 S. E. 177), except in the use of the word "menace." If authorized by the evidence, and such a charge is given, it would be better to follow the expression in the case cited. But, as a reversal is granted on another ground, it need not be determined whether this would be cause for a new trial.

APRIL 14, 1911.

Indictment for murder. Before Judge Jones. Hall superior court. February 3, 1911.

*J. J. Kimsey* and *Samuel Kimzey,* for plaintiff in error.

*H. A. Hall, attorney-general,* and *Robert McMillan, solicitor-general,* contra.

LUMPKIN, J. Leonard Worley was indicted for the murder of E. S. (Emory) Worley. The State introduced a single witness, who testified, in brief as follows: The accused and the person killed were brothers, and the witness was their brother-in-law. The accused came to the house of the witness about one o'clock at night, and said that Emory had beaten him with knucks, and that he was going to shoot his brother. The witness saw where the neck of the accused was scratched a little. The witness told him not shoot his brother, but to return home. The accused went to the house of a named person, and the witness called him back. He brought his gun with him, and set it beside the door. "He got down on his

knees and could hear a racket over at my mother's, and he grabbed his gun and shot, and they shot over at the other house." The witness said, "I see them leaving my mother's." The accused said, "he was going to shoot him, if he run up on him." The moon was shining brightly. Emory Worley left the house of the father-in-law of the witness, "and came running on him (Leonard), and Leonard shot him." Both the witness and his wife endeavored to prevent Emory from coming to the place where Leonard was, but he would pay no attention to them, and ran "right on him (Leonard)." This witness warned Emory twice to go back, and that if he went up there Leonard would'kill him. The wife of the witness also tried to catch Emory and hold him, but he ran against her; shoved her back, and ran right on. He was within three feet of Leonard when the latter shot him. So far as the witness could see, Emory had no weapon or other thing in his hand, but a pair of metal knucks was found lying three or four inches from his hand. He had a pocket-knife on him. The shot produced instant death. The accused was convicted, with a recommendation to mercy. He moved for a new trial, which was refused, and he excepted.

The evidence in this case is somewhat meager. The State introduced a single witness, who testified to what occurred at the time of the killing. It was inferable from his testimony that there had been a previous difficulty, or some previous transaction leading up to the homicide. Neither the State nor the accused introduced any evidence on that subject, though it might have cast light on the question of malice or the absence of it. The accused made no statement. The evidence of the State's witness did not show such a clear and unquestionable case of murder, that certain inaccuracies or errors in the charge could be declared harmless. The charge on the subjects of justifiable homicide, voluntary manslaughter, and reasonable doubt was not free from criticism. The statement quoted in the seventh headnote was not correct. By the Penal Code (1910), § 70, it is declared that "Justifiable homicide is the killing of a human being . . in self-defense, or in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony on either," etc. By section 71 it is declared that "A bare fear of any of those offenses, to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing. It must ap-

pear that the circumstances were sufficient to excite the fears of a reasonable man, and that the party killing really acted under the influence of those fears, and not in a spirit of revenge." It will be seen that justifiable homicide is based on the idea of prevention of, or defense against, the commission of certain acts by the person killed. Under the section first quoted the defense is against one who manifestly intends or endeavors to commit the acts mentioned. In the second of the two sections, circumstances sufficient to excite the fears of a reasonable man, and acting under the influence of such fears, and not in a spirit of revenge, take the place of proof of an actual endeavor on the part of the person slain to commit such acts. Voluntary manslaughter differs from justification. It does not rest on the same basis as the defense against the actual commission of a felony or acting under reasonable fears. It is a criminal homicide, but it is mitigated by the excitement of passion justified by some actual assault, or an attempt by the person killed to commit a serious personal injury on the person killing, or other equivalent circumstances. The killing must be the result of that sudden, violent impulse of passion, supposed to be irresistible, and excluding all idea of malice. The difference between justification arising from acting under the fears of a reasonable man, and mitigation arising from uncontrollable passion, justified by circumstances, is apparent.

We have considered whether the judge, in including the reduction of a homicide from murder to manslaughter in his charge on the subject of reasonable fears, did not rather err in favor of the accused than against him. But when the judge charged that the circumstances must be sufficient to excite the fears of a reasonable man that a serious bodily injury, not amounting to a felony, was about to be inflicted upon the accused, in order to reduce the killing from murder to manslaughter, thus excluding the consideration of other matters which might be sufficient, under the statute, to arouse uncontrollable passion and reduce the killing to manslaughter, it can not be held that this was harmless error. In another part of his charge he again applied the doctrine of reasonable fears to the subject of voluntary manslaughter.

In arguing a criminal case, counsel may read law to the jury, subject to the correction of the court in his charge, in order to apply the facts to the rules of law which they contend are applicable to

the case. *McMath* v. *State*, 55 *Ga.* 303 (8); *Cribb* v. *State*, 118 *Ga.* 316 (10), (45 S. E. 396), and citations. The main reason for this is, that, to be effective, where a general verdict is to be rendered, an argument must not only deal with what are the facts, but what result should follow from an application of the rules of law to such facts. In order to do this, the lawyer must be able to state to the jury what he believes to be the correct rule of law on the subject. He can not always know in advance just what the judge will charge. That, in a criminal case, he reads what he thinks is the rule in the presence of the jury is not ordinarily objectionable. He does so subject to the correction of his positions of law by the judge in his charge. Here the judge stated that the jury should get the law from the charge, and his charge was to the effect that the accused was presumed to be innocent until proved guilty beyond a reasonable doubt. This court has held that no legal presumption of guilt arises under the Penal Code (1910), § 1015 (Penal Code (1895), § 989), and that in a criminal case the court should not give that section in charge. *Long* v. *State*, 126 *Ga.* 109 (54 S. E. 906); *Mills* v. *State*, 133 *Ga.* 155 (5), (65 S. E. 368). The failure to introduce witnesses after swearing them might be a legitimate subject of comment by a prosecuting attorney, and authorize him to contend that the jury might draw inferences of fact therefrom prejudicial to the accused; but no *legal presumption of guilt* would arise from such action. Of course this broad right of argument may be abused, like any other right or privilege. But this court will not presume that conscientious counsel will intentionally use it as a means of misleading a jury.

The presiding judge charged as set out in the ninth headnote. This charge was evidently taken from the opinion of Chief Justice Simmons in *Cumming* v. *State*, 99 *Ga.* 664 (27 S. E. 177). It seems to follow the statement of that opinion quite closely, except that the expression is there used, that, "In order to justify a homicide, there must be something more than mere verbal threats," etc., while here the judge employed the expression that "There must be something more than a mere threat or menace," etc. In Webster's Dictionary the word "menace" is defined as follows: "The show of an intention to inflict evil; a threat; indication of probable evil or catastrophe to come; that which menaces; an impending evil." The word, as thus defined, has a meaning synonymous with

threats, and also one signifying something more than mere words. If the evidence authorized such a charge, it would be more apt to let it follow the expression contained in the *Cumming* case, from which this charge was drawn, or to make it appear in what sense the term "menace" is used. But inasmuch as the judgment is reversed on another ground, we need not determine whether this charge would furnish a cause for reversal.

Except as herein stated, none of the rulings contained in the headnotes require further elaboration. If during the former trial any small inaccuracies not specially mentioned were committed, they were not such as to be likely to occur again.

*Judgment reversed. All the Justices concur.*