SHEPHERD *v.* THE STATE.

GILBERT, J. 1. The defenses applicable in a case of homicide, provided in the Penal Code, § 71 and § 73, are distinct. *Surles* v. *State,* 148 *Ga.* 537 (7), 538 (97 S. E. 538). Section 71 is applicable where the slayer is without fault, and in that case a seeming or apparent necessity, if acted upon in good faith, is equivalent to a real necessity. Section 73 is applicable to a case of mutual combat, where both parties are at fault. "To be justified for a homicide following a mutual combat, it must appear that the danger to the slayer was so urgent and

pressing at the time of the killing, that, in order to save his own life, the killing of the other was absolutely necessary. The principles of law which justify a killing in each of these two instances stand upon an entirely different footing. In the one case, that following mutual combat, the slayer, having been at fault in that he voluntarily entered the fight which brought on the necessity, can only take the life of his antagonist when it is absolutely necessary to save his own life, and only then when the person killed was the assailant, or when the slayer has in good faith endeavored to decline any further struggle before he strikes the mortal blow. A homicide to prevent the commission of a felony on the person of the slayer is a pure defense unmixed with fault, so that it be done under circumstances sufficient to excite the fears of a reasonable man that the deceased was intending or endeavoring by violence or surprise to commit a felony of any grade on his person, habitation, or property." *Dill* v. *State*, 106 *Ga.* 683, 687 (32 S. E. 660). The doctrine of seeming or apparent necessity is not applicable to a case of mutual combat falling under the Penal Code, § 73; and accordingly the court did not err in instructing the jury on the law of mutual combat, and the defenses appropriate in such case, that it would be necessary for the accused "to show, before he could be justified and found not guilty, that an actual necessity existed to save his own life." *Powell* v. *State*, 101 *Ga.* 9 (6, 7), 22 (29 S. E. 309, 65 Am. St. R. 277).

2. The court charged the jury: "Express malice is the deliberate intention unlawfully to take away the life of a fellow creature; manifested by circumstances capable of proof. Wherever it is shown in a case that one makes up his mind unlawfully to kill another, then express malice is shown, because that is the definition of express malice; it means the deliberate intention unlawfully to take away the life of a fellow creature. Malice does not always mean hatred or ill will; but whenever one unlawfully makes up his mind to kill another and executes that intention, then the law says that it is express malice." The omission of the word "external" before the words "circumstances capable of proof" was not prejudicial. Compare *Worley* v. *State*, 136 *Ga.* 231 (71 S. E. 153). On a fair construction this excerpt from the charge, though otherwise subject to some criticism, is not cause for a new trial.

3. The court charged the jury: "But malice will be implied in every case of an unlawful killing where no considerable provocation occurs and all the circumstances of the killing show an abandoned and malignant heart." This was a substantial compliance with the Penal Code, § 62, and the slight variation does not constitute error.

4. The newly discovered evidence was impeaching in character, and would not probably cause a different result on another trial. The court did not err in refusing a new trial on the grounds of alleged newly discovered evidence.

5. The ground of the motion for new trial complaining that the court erred in failing to charge the jury "upon the law of voluntary manslaughter as applicable to cases of mutual combat" is shown, by the charge of the court actually given, to be without merit.

6. The evidence required the court to instruct the jury in regard to the law of mutual combat, both as to murder and voluntary manslaughter, and therefore the court did not err in instructing the jury accordingly.

7. Error is assigned upon the refusal of the court to give in charge certain requested instructions, and upon other excerpts from the charge, on the ground that there was no evidence to authorize such instructions; and upon the ground of verbal inaccuracies. While in some instances the charges complained of contain slight verbal inaccuracies, in the light of the evidence and the entire charge none of these assignments of error require the grant of a new trial, and they are not of such character as to require special mention. The verdict was supported by evidence, and the court did not err in overruling the motion for a new trial.        *Judgment affirmed. All the Justices concur.*

No. 2029. DECEMBER 16, 1920. REHEARING DENIED JANUARY 14, 1921.

Indictment for murder. Before Judge Mathews. Bibb superior court. April 3, 1920.

The evidence for the State tended to show substantially as follows: The deceased (Clance) lived diagonally across Third Street from the defendant (Shepherd). For some years there had existed between them and their families the most cordial terms of friendship. About two weeks prior to the shooting the defendant made certain offensive remarks to a married daughter of the deceased. The wife of the deceased was told by the daughter of these remarks; and at this time a younger daughter also told the mother that the defendant endeavored to get in the bed where she and her sister were sleeping on an occasion when they had spent the night in his home about four years previously, but concerning this she had not until this time said anything to any one. Mrs. Clance communicated these things to the deceased, and his family discontinued relations with the family of the defendant. The defendant was in the habit of carrying a pistol. In the afternoon of the date on which the shooting occurred, Mrs. Smith, the married daughter of the deceased, told a neighbor living next door to the defendant of his having insulted her. At about ten o'clock that night the defendant went across the street to the Clance home, and asked in a loud angry tone to see Mr. Clance, or where he was, and, upon being told that he was asleep, asked Mrs. Smith why she was going around telling lies on him, and stated that whoever said he insulted her told a lie, and that if it was not stopped there would be one of the biggest fights there ever had been in the 1800 block. The younger daughter then asked him what

he considered an insult, and if he did not recall the occasion on which he had come to her bed, to which the defendant replied, "That is a story." Clance then came upon the veranda and took a seat in a chair. The defendant stated to Clance that he wished to talk with him privately, and was told by Clance to say whatever he had to say. The defendant then stated that whoever said he had insulted them (the daughters of deceased) told a damned lie. The deceased struck the defendant with his fist; they grappled, fighting with their fists, and shuffled along several feet away from the house. Two sons of the defendant, who were practically grown, ran across the street and entered the fight. A visitor to the Clance home (Tom Smith), upon Mrs. Clance's request, endeavored to stop the fight. A daughter of the deceased endeavored to separate the combatants, and was knocked down. In the general fight the defendant was knocked down, and as he rose one of his sons knocked the deceased down, and as he was rising, and while still in a stooping posture with his hands upon the ground, the defendant drew his pistol and fired at close range, the bullet striking the deceased in the back, inflicting a fatal wound.

The defendant's contentions, by his statement and evidence introduced in his behalf, were: That the shooting was done in self-defense. He was employed on a railroad wrecking-crew, which included a number of negro workmen. He was at times called to his work at unusual hours, and as a means of protection it had been his custom to carry a pistol. He had the pistol in his pocket according to this custom. Immediately prior to the shooting he had returned home from a trip up town, and was told by a son, who had overheard Mrs. Smith's statements to his next-door neighbor, of what she had said. He then went to see Mr. Clance as the head of the family, and requested a private interview, stating to him that they could not talk with the women butting in; and the deceased stated he was ready to hear whatever defendant had to say. The younger daughter related her statement that the defendant had come to her bed; whereupon the deceased struck defendant with his fist, causing the latter to stagger backward four or five feet, and they went to fighting with their fists. All of the women present took part, hitting at defendant, and Tom Smith struck him. Mrs. Clance

and Tom Smith picked up bricks in a threatening manner. Neither of the defendant's boys actually reached the scene until after the shooting, and did not take any part in the fighting. The deceased had hold of the defendant's throat, had him down upon the ground, and both the deceased and Tom Smith were upon the defendant and beating him when the shot was fired. The jury returned a verdict of guilty, with recommendation; whereupon the defendant filed a motion for new trial, which was overruled, and he excepted. The grounds of the motion are dealt with in the headnotes.

*Ross & Ross, John R. Cooper,* and *W. O. Cooper, Jr.,* for plaintiff in error.

*R. A. Denny, attorney-general, Charles H. Garrett, solicitor-general,* and *Graham Wright,* contra.