### BRYANT *v.* BRYANT.

No. 13666. MAY 14, 1941.

*A. S. Boone Jr.* and *M. F. Adams,* for plaintiff in error.
*Tolnas & Middlebrooks* and *Victor Davidson,* contra.

ATKINSON, Presiding Justice. A petition filed by a husband

alleged the following as ground for divorce: "That on the 11th day of January, 1939, plaintiff and defendant were married in the manner hereinafter set forth; that said marriage was forced upon plaintiff by the defendant and her brother, Jack Walton, and her father, by menaces, duress, and intimidation; that on the night said marriage took place, and immediately prior thereto, the said defendant, her father, and her said brother demanded that he, the plaintiff, immediately marry her; that her said father was cursing violently and menacing plaintiff with intimations of personal injuries to plaintiff; that both the said Jack Walton and his father were strongly built men, and were demanding immediate action; that her said father stated to plaintiff that he would give him only ten minutes in which to make up his mind on whether he would marry defendant, and plaintiff in fear of his life and personal safety agreed to enter into said contract; that but for fear caused by said threats and duress he would not have entered into said marriage contract; that the aforesaid father and brother of defendant, to whose home plaintiff had been called, intimated to plaintiff that he would not be permitted to leave until the marriage was consummated. As soon as the forced ceremony was performed, plaintiff separated from defendant and has never cohabited with her." By amendment it was averred: "Petitioner is informed, and upon such information and belief alleges, that just previous to the performance of said marriage ceremony the defendant falsely and maliciously represented to her father that the child of which she was then and there pregnant was that of petitioner, and that she had not had sexual intercourse with any other man, being a virtuous female, and that for this reason said child was petitioner's; that said false statement was made in order to, and well knowing that it would, inflame the feelings of, and was made for the purpose of causing, her said father to commit the unlawful and unwarranted acts constituting duress upon petitioner hereinbefore alleged, and that in the premises defendant's father and her brother were agents and servants in forcing upon petitioner the marriage ceremony hereinbefore described."

To the petition, both before and after amendment, the defendant demurred, and moved orally to dismiss the action. The motion was overruled. The husband offered evidence in support of his allegation. The jury found in his favor. The wife's motion for

new trial on the general grounds was denied. Error is assigned on these rulings.

■ One of the grounds of total divorce in this State is, "Force, menaces, duress, or fraud in obtaining the marriage." Code, § 30-102 (4). "Duress consists in any illegal imprisonment, or legal imprisonment used for an illegal purpose, or threats of bodily or other harm, or other means amounting to coercion or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will." § 96-209. In *Dorsey* v. *Bryans*, 143 *Ga.* 186, 188 (84 S. E. 467, Ann. Cas. 1917A, 172), after quoting the section last referred to, it was observed that "This definition is sufficiently comprehensive to include any conduct which overpowers the will and coerces or constrains the performance of an act which otherwise would not have been performed." In *Worley* v. *State*, 136 *Ga.* 231, 235 (71 S. E. 153), is quoted Webster's definition of the word "menace," to wit: "The show of an intention to inflict evil; a threat; indication of probable evil or catastrophe to come; that which menaces; an impending evil." In *Cumming* v. *State*, 99 *Ga.* 662, 665 (27 S. E. 177), Webster's definition of the word was given, and in the opinion it was said that "Any overt act of a threatening character, short of an actual assault, is a menace." As against an oral motion to dismiss, the petition, under the authorities cited above, set forth a valid ground of divorce.

■ The only witness introduced was the plaintiff. His testimony supported every allegation in his petition. It appeared therefrom that the defendant's brother saw him and told him that his sister was pregnant, and accused him, the plaintiff, of being guilty. The plaintiff denied it. The brother said something should be done about it. The plaintiff agreed to see the sister the next afternoon. He did drive about nine miles to see her, but before leaving he observed defendant's father watching him. Reaching defendant's home, he saw her brother, who came out to plaintiff's car. Presently defendant came, who insisted that something must be done, again accusing him of being the author of her ruin, and he again denying it. While they were talking the father drove up with the marshal of the town. The father alighted cursing. The plaintiff testified: "He told me he would give me ten minutes to marry the girl. . . After saying that, he left me and went to where Jack [the brother] was cutting wood. He and Jack

went around to the other side of the house, and after ten minutes came back . . and asked me if I had decided what I was going to do. I was in fear of my life. I was in fear of my liberty. I told Mr. Walton I was not responsible and didn't think I should have that responsibility, and also asked that he give me some time to consider the thing and decide what to do, and he said he would not give me any time. . . I believed he [Mr. Walton] had a pistol in his pocket. He pressed his hand on his right pocket. He was cursing. I was in fear of my life if I didn't do what he asked. Jack [the brother] had an ax in his hand part of the time."

Here we have the threat, the menace, delivered under circumstances well calculated to impress the young man with the seriousness of its import, and that the means were at hand to carry it speedily into execution. The daughter had accused him of a crime. An irate father accompanied by an officer of the law came upon the scene. A brother of the defendant was present, pressing him to decide whether or not he would marry the girl. Protesting that he was innocent, and asking for time to consider the matter, which was refused him, he swears that he was in fear of his life, and in effect testifies that his will was thus coerced, and that the conduct of the girl's father and brother described by him actually induced him to do an act contrary to his free will. The jury could well have found this to be duress. Plaintiff and defendant then went to the county-site, the brother accompanying them in another car. The brother got the marriage license and paid for it, and the ordinary performed the marriage ceremony. After the ceremony, the wife left for the town of McIntyre and the husband went to Toomsboro, where he was engaged in teaching. He did not live with the defendant. The defendant did not testify; neither did her father or brother. "In arriving at a verdict, the jury, from facts proved, and sometimes from the absence of counter evidence, may infer the existence of other facts reasonably and logically consequent on those proved." Code, § 38-123. Under the evidence the jury were authorized to grant a total divorce. They did so. The judge approved their verdict. He did not abuse his discretion.

*Judgment affirmed. All the Justices concur.*