32475. LEWIS *v.* THE STATE.

DECIDED MAY 21, 1949.

*W. C. Calhoun, Pierce Brothers,* for plaintiff in error.
*George Hains, Solicitor-General,* contra.

GARDNER, J. ■ It would seem that anyone by reading the record as above set forth would have little difficulty in arriving at the conclusion that the evidence sustains the verdict of voluntary manslaughter under a sudden heat of passion supposed to be irresistible as contained in the general law applicable to this phase of voluntary manslaughter. And that under the statement of the defendant, the phase or principle of voluntary manslaughter as applied to mutual combat is involved. In this view, so far as the general grounds are concerned, the verdict is authorized.

■ There are three special grounds. Special grounds 1 and

3 may discussed together. Distinguished counsel for the defendant so deal with them, and we will do likewise. Special ground 1 excepts to the following excerpt from the charge of the court: "Gentlemen of the jury, there are two defenses set up here, one is that of self-defense, and the other is what the law says is the fears of a reasonable man, so that if you believe that this defendant struck and killed the deceased and that he did so in his own self-defense, he is not guilty, or if you should find and believe that the defendant struck and killed the deceased, and when he did, it was under the fears of a reasonable man that some bodily harm was about to be done him amounting to a felony, and he acted under the influence of those fears and not in a spirit of revenge, and you so find, then the defendant would not be guilty and it would be your duty to so find. A seeming necessity, when acted upon in good faith, is equivalent to a real necessity." It is contended: (1) "that this confused the law of self-defense with the law of justifiable homicide"; and (2) that the principles of law involved of killing under a real necessity and under an apparent necessity should not have been given in immediate connection with each other without further appropriate instructions.

Special ground 3 sets forth an excerpt from the charge of the court with reference to voluntary manslaughter, as follows: "Now, gentlemen of the jury, I charge you another separate and distinct principle of law and that is the law of manslaughter. Manslaughter is the unlawful killing of a human being without malice either express or implied and without any mixture of deliberation whatever, upon a sudden heat of passion. That is what is necessary for you to find in order to reduce a homicide from a higher grade to a lower grade. In all cases of voluntary manslaughter there must be some actual assault upon the person killing, or some attempt by the person killing, or other equivalent circumstances, to justify the excitement of passion and to exclude all idea of deliberation or malice either express or implied. Provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder. The killing must be the result of that sudden violent impulse of passion supposed to be irresistible, for if there should have been an interval between the assault

and provocation given and the homicide, of which·the jury shall be the judges in all cases, sufficient for the voice of reason and humanity to be heard, the killing shall. be attributed to deliberate revenge and be punished as a murder. So that, gentlemen of the jury, whether applied to the higher grade of murder or the lower grade of manslaughter, if, when the killing happened, it was done in the defendant's own self-defense, he is not guilty. If it was done under the fears of a reasonable man that some bodily harm was about to be done him amounting to a felony, he would not be guilty, and if he really acted under the influence of those fears in good faith and not in a spirit of revenge, he would be justified and should be acquitted. .While the law says that provocation by words, threats, menaces, or contemptuous gestures shall in no case be sufficient to free the person killing from the guilt and crime of murder, yet when you consider whether, when he struck, he did so under the fears of a reasonable man that some bodily harm was about to be done him amounting to a felony, you may consider any such words, threats, menaces or contemptuous gestures, if you find any of them, along with the other evidence. Now I charge you that, if the homicide was committed and you find that the defendant did it and he did so under the fears of a reasonable man that some bodily harm was about to be done him amounting to a felony by the person killed, or an attempt by the person killed to commit a serious personal injury upon the defendant, or other equivalent circumstances to justify the excitement of passion or exclude all idea of deliberation or malice, either express or implied, and not in his own self defense, then, in that event, he would be guilty of manslaughter and you should so find. Persons not guilty are fully discharged by the jury."

We will quote in full the exceptions to this charge, as follows: "That such charge was mingled with a charge of justifiable homicide, as the doctrine of reasonable fears and self-defense has no connection with the offense of voluntary manslaughter, even if manslaughter was involved in the case. And such charge was harmful to movant and influenced the jury to his prejudice in the rendition of its verdict." Counsel for the defendant contends that the excerpts set forth in special grounds 1 and 3 confused the jury because the principles of law in the Code, §§ 26-.

1011 and 26-1012, and 26-1014, were thereby charged in such a manner as to confuse the jury in a proper application of the principle of law contained in § 26-1014.

Code § 26-1011 is the general provision of our law in regard to justifiable homicide in self-defense and in defense of habitation, etc. Code § 26-1012 is a species of self-defense under the doctrine of reasonable fears. The first of those sections involves and justifies a killing where there is an actual necessity to kill in self-defense. The latter of those sections justifies a killing when there is no actual necessity to kill, but where under all the facts and circumstances a reasonable man would be excited by such fears as if it were necessary to kill the deceased to save his own life. And such an apparent necessity, if acted on in good faith, and not in a spirit of revenge, is always justifiable. So the two principles there are but means which converge to the same end of justification. Code § 26-1014 applies to a homicide where the principle of law of mutual combat is involved. It reads: "If a person shall kill another in his defense, it must appear that the danger was so urgent and pressing at the time of the killing, that, in order so save his own life, the killing of the other was absolutely necessary; and it must appear, also, that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given." The only occasion in which this section is ever applicable in the trial of a homicide is where both parties mutually intend to fight and generally with deadly weapons. For the time being and before we discuss the principles of mutual combat later on in this opinion, we will assume that the evidence sustains the principle of law applicable to mutual combat. The Code, § 26-1014, as we interpret it, simply provides that, where the principle of law of mutual combat is involved, neither of the parties engaged therein is justified in taking the life of the other unless two things appear: (1) the danger must be so urgent and pressing at the time of the killing that the one killing had to do so in order to save his own life; and (2) in conjunction with the killing it must appear also that the person killed was the assailant; or, in conjunction with the killing, that the slayer had really and in good faith *"endeavored to decline any further struggle before the mortal blow was given."* In reading

the whole charge of the court in connection with the excerpts set out above, the charge is not subject to the attack made upon it. The taking of human life under the principles of law as set out in the Code, § 26-1014, is never justifiable unless those two things appear from the evidence. If those two things do not appear, the killing is voluntary manslaughter. We think that the court quite clearly made this appear to the jury, and they could not have been, as we see it, confused. These grounds require no reversal, as we see it, under the record of this case.

■ Special ground 2 assigns error for the reason that it is contended that the evidence does not sustain the charge of the court on the principle of the law of mutual combat, and therefore it was error for the court to charge the principles of the Code, § 26-1014, with reference to mutual combat and as the principles of mutal combat apply to voluntary manslaughter. It is further contended that the court in charging the principles of mutual combat expressed an opinion that the evidence was to the effect that there was a mutual combat. This contention is based on the following excerpt from the charge: "When two persons engage in mutual combat, or when mutual combat arises, where there is a mutual intent to fight, each to fight the other, if, while engaged in mutual combat, to justify the killing. . ." We do not think that this isolated excerpt expresses any opinion at all, in view of the whole charge of the court, that the evidence was sufficient to establish that there was a mutual combat. Let us then inquire as to whether the court was authorized to charge the principle of the law of mutual combat, in view of the defendant's statement. We think that it shows that the court was authorized to charge on that principle. While it would not have been error not to have done so, it was not error to do so. There are many decisions to the effect that, if it is doubtful, the court should charge it and leave it to the jury. The defendant said in this connection, after relating a difficulty between the deceased and himself: "He said, 'Don't cuss me for a son-of-a-bitch', and he backed back and started over from behind the car and struck me, and I said, 'Don't strike me,' and when he struck me I staggered back. He hit my head and it glanced off and he backed back up to the car, and I picked the level up, and he put his hand in his pocket and said, 'God damn it, I'll kill you,' and I

hit him and I wasn't trying to kill him." It will thus be seen from this statement of the defendant that the defendant and the deceased were engaged in a difficulty (and that they had been for some time, according to the record). The jury were thus authorized to find that the defendant with a level, a deadly weapon with which he killed the deceased, and the deceased circumstantially with a deadly weapon which he was attempting to pull out of his pocket, were agreed to fight to the finish with deadly weapons. If the deceased did not have a deadly weapon in his pocket, why did he say to the defendant that he would kill him? It is interesting to note also that from the record, aside from this defendant's statement, it was not absolutely necessary to take the life of the deceased under the principles of the Code, § 26-1014. And it does not appear from the record that the deceased was the assailant, but it does appear that the defendant was the assailant. And neither does it appear that the defendant had endeavored to decline any further difficulty. We therefore conclude that it is inescapable that mutual combat was involved under the defendant's statement, and the court did not err in instructing the jury to this effect.

■ The appellate courts of this State have many times had before them the issues presented under this record, and we have given considerable thought in the cases heretofore and in this case to the principles involved and discussed. But in connection therewith we would like to call attention to some of the recent decisions involving these issues, so that the bench and bar may readily have some of them at hand. In the beginning, let us say that, if there should be any error in a trial for murder in charging justification under the general section of the Code, § 26-1011, or justification under the Code, § 26-1012, or the principles of absolvement from murder under the mutual-combat doctrine of the Code, § 26-1014, such would not be reversible error where the verdict is voluntary manslaughter. This is true for the reason that a verdict of voluntary manslaughter is an acquittal of murder under either one of the above Code sections. Such errors, if there be any, if a verdict is returned for murder, might be urged. One of the most recent cases is that of *Davis* v. *State*, 76 *Ga. App.* 427 (46 S. E. 2d, 520). We particularly call attention to the citations beginning at the botton of page 431, in

division 2 of that opinion. There are many other cases to the same effect. We will not here cite them, but they will be found under our Code section with reference to mutual combat.

. The court did not err in overruling the motion for new trial for any of the reasons assigned.

*Judgment affirmed. MacIntyre, P. J., and Townsend, J., concur.*