## 36143. GORDY v. THE STATE.

DECIDED APRIL 11, 1956.

*Charles W. Heath, George Jordan, Ewing & Farrar,* for plaintiff in error.

*W. Glenn Thomas, Solicitor-General,* contra.

TOWNSEND, J. The general grounds of the motion for a new trial and the special ground are considered together, since the question presented is whether or not the evidence authorized a verdict of guilty of voluntary manslaughter, and whether or not the trial court properly gave this principle of law in charge to the jury. The defendant's position is that the homicide was justified under Code § 26-1011, which provides in substance that justifiable homicide is the killing of a human being in self-defense against one who manifestly intends or endeavors by violence or surprise to commit a felony thereon; and Code § 26-1012, which provides for the rule of apparent rather than actual necessity, as follows: "It must appear that the circumstances were sufficient to excite the fears of a reasonable man, and that the party killing really acted under the influence of those fears, and not in a spirit of revenge." A person making a lawful arrest is justified in killing under the fears of a reasonable man that a felony is about to be committed upon himself or his fellow officer. *Adams* v. *State,* 72 *Ga.* 85. It cannot be seriously argued but that an officer about to make an arrest, which intention was made known to the person sought to be arrested, may reasonably fear a felony is about to be committed upon himself and others in the automobile, when the person pursued and sought to be arrested suddenly halts his car and jumps out to confront his pursuers, while at the same time pointing a pistol at them. Accordingly, if this is the only construction to be put on the evidence, the officer was entirely justified in firing to protect his life and that of his companion. Justification, if established under these Code sections, should

always result in acquittal. *Lewis* v. *State,* 79 *Ga. App.* 326 (53 S. E. 2d 590).

If, on the other hand, the arrest sought to be made is unlawful, the person sought to be arrested has a right to resist, and, if such person is in the right, and under the fears of a reasonable man, expects a felony to be committed upon himself, then he has a right to resist up to the point of slaying those seeking unlawfully to arrest him. *Wall* v. *State,* 153 *Ga.* 309 (11) (112 S. E. 142). One who is himself at fault is not allowed the benefit of the provisions of Code § 26-1012, but is justified, if at all, under the provisions of Code § 26-1014, and must show "that the danger was so urgent and pressing at the time of the killing, that, in order to save his own life, the killing of the other was absolutely necessary; and it must appear, also, that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given." This Code section, rather than those above quoted, applies where there is mutual fault, and mutual combat. *White* v. *State,* 24 *Ga. App.* 122 (100 S. E. 9) ; *Shepherd* v. *State,* 150 *Ga.* 799 (1) (105 S. E. 485). See also *Battle* v. *State,* 85 *Ga. App.* 682 (69 S. E. 2d 909).

Accordingly, it becomes relevant to inquire whether the defendant was seeking to make a legal or an illegal arrest at the time of the homicide. It appears without dispute that the officers were in receipt of information that the victim had at gun point taken a young lady into his car, that he was drunk, and that he had forcibly driven her away against her will and had threatened the life of her escort, all of which obviated the necessity of getting a warrant before setting out in search of him. While no crime had been committed in the presence of the officers, their information was that the offender was endeavoring to escape and there was likely to be a failure of justice if he was not apprehended. Had the officers postponed their search for the offender until they procured a warrant, he might have wrecked the car or otherwise injured his unwilling passenger. It was therefore proper for the officers to proceed to search for him at that time without first procuring a warrant for his arrest. Upon their failure to find him, a warrant should have been procured if a magistrate was available, and if they anticipated that he might still be within

their jurisdiction. The record is silent on these questions, but it does show that the time was between midnight and 2 a. m., which suggests that a magistrate might not have been available to issue a warrant without going to unusual difficulty, and perhaps the officers intended to abandon the search until the following day. At any rate, they returned to the police station and merely by chance, some time later, saw the victim, saw a young woman get out of his car, and at that time began the chase which ended in the homicide. On the question of getting a warrant, Beckworth testified: "We told him (the informant) if he (the victim) was threatening his life, to take out a warrant, but if he was driving under the influence we could take care of it if he came back to town." Peace officers often misconstrue the necessity for procuring warrants to make arrests. They sometimes take the position that if an offense is committed against an individual, the complaining party must get a warrant before they can make an arrest, but if the offense is against society as a whole, they have a perfect right to make an arrest without a warrant. Code § 27-207 provides: "An arrest for a crime may be made by an officer, either under a warrant or without a warrant, if the offense is committed in his presence or the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant." Obviously, from this provision of the law, it is equally as necessary to get a warrant in the one circumstance as in the other. A better understanding of the laws of this State respecting the rights of the sovereign people on the part of peace officers would result in more efficient law enforcement and would minimize unlawful conduct on the part of peace officers themselves.

Be that as it may, the undisputed evidence shows that there was no violation of law on the part of the defendant and his fellow officer in seeking out the victim in the first instance. When they saw him again, between 2 and 3 a. m., the undisputed evidence is to the effect that the victim immediately drove off at high speed. This speed, however, does not appear to have been in violation of a State law, and no ordinance of the City of Hazlehurst appears in the record. He did, however, on two occasions drive his car to the left of the center of the road, thus violating the provisions of Code (Ann. Supp.) § 68-1633, which is a misde-

meanor. The officers also had good reason, from the way the victim was driving plus what had been told them about his condition, to believe that the offense of drunk driving was also being committed in their presence. Accordingly, they had a right to follow him, signal him to stop, and arrest him without first going to the proper authorities to get a warrant for this offense.

It follows that there was no illegal conduct on the part of the officer, and the defense set out under Code §§ 26-1011 and 26-1012 was available to him. Since he had no way of knowing that the pistol which the victim aimed in his direction was in fact unloaded, and since it obviously appeared from this act that a felony was about to be committed upon his person or that of his fellow officer, the defendant was justified in shooting first. Feeling that the ministers of the law are under a compelling obligation to set an example of compliance with it, this court is not disposed to condone unlawful acts on the part of peace officers in violation of the rights of citizens. However, as herein pointed out, no substantial fault can be found with the conduct of the defendant leading up to this homicide, confronted as he was with the particular circumstances surrounding the tragedy. Even should the evidence present a theory placing the defendant to any extent in the wrong in the course of his conduct, the theory that he was in good faith acting under the fears of a reasonable man that his life and the life of his fellow officer were about to be taken is more reasonable when all the facts and circumstances are considered. In *Rutland* v. *State*, 46 *Ga. App.* 417, 422 (167 S. E. 705), Judge Guerry, speaking for this court, said: "Under the facts as above outlined it would seem to this court that the conclusion that the defendant acted under the fears of a reasonable man in trying to prevent the deceased from gaining possession of the pistol and committing a felony on the defendant is just as reasonable as that he shot as a result of a sudden heat of passion and without any mixture of deliberation whatever. 'Where the facts in evidence and all reasonable deductions therefrom present two theories, one of guilt and the other consistent with innocence, the justice and humanity of the law compel the acceptance of the theory which is consistent with innocence.' *Davis* v. *State*, 13 *Ga. App.* 142 (78 S. E. 866)."

From the evidence in this record it appears as a matter of law

that the homicide was justified. Accordingly, the evidence is insufficient to support a verdict of voluntary manslaughter, and this principle of law should not have been given in charge to the jury. The trial court erred in denying the motion for a new trial.

*Judgment reversed. Gardner, P. J., and Carlisle, J., concur.*