30277. SMITH *v.* THE STATE.

DECIDED JANUARY 5, 1944.

*Ernest C. Britton, Joseph O. McGehee,* for plaintiff in error.
*Ed Wohlwender Jr., solicitor-general, Olan A. Slayton,* contra.

GARDNER, J. The defendant was convicted of voluntary manslaughter on an indictment charging murder. In addition to the general grounds there is one special ground which assigns error because the court charged the principle of law governing confessions, when the evidence did not authorize it. This special assignment is controlling. A witness for the State testified as follows: "I am

Mr. Adair, chief of detectives in Muscogee County, Georgia.. I did have occasion to investigate the defendant on trial. He made a statement freely and voluntarily without the remotest fear of injury or the slightest offer of reward or hope thereof. This is the statement he made to me on Sunday morning. I believe this happened earlier on Sunday morning about 1:30, and this statement was taken about 10 o'clock on the same morning. He said that on this night him and this boy had been friends for a good long while, and said they went in there and got in an argument, and he said he threw this boy down and got on top of him. Clyde Smith made him get out, and after they got out on the outside, looked like this boy didn't like it, and they got on the outside, and he got the best of him—and he didn't know who it was pulled him off of him—but said this boy, the deceased, Bellamy, run his hand in his pocket and he thought he was going to do something to him, and he pulled his knife and cut him. He said after he cut him he went to Onie Barber's house and spent the night, and went to Mr. Seymour's place in the morning, I believe, and Mr. Seymour called the police. He didn't say anything about the deceased having a knife in his hand. He said he run his hand in his pocket, and he thought he might be going to pull a knife, and he cut him. I investigated all of the witnesses. I talked to all the witnesses the State has presented. I wrote the statement on the typewriter. I wrote it as I talked with the defendant. Those are his words. Got his signature right at the bottom of it. He told me that they were just playing in there too. He said nobody was mad. The killing happened the early morning of the 13th. This was the night of the 12th, but the killing happened after midnight, which would have made it the 13th, I believe." Such is the only evidence which justified the following charge of the court, of which complaint is made: "Now, gentlemen, the State has introduced evidence which the State claims is of a confession made upon the part of the defendant, and I charge you this to be the law, gentlemen; a confession is a voluntary statement made by a person charged with the commission of a crime wherein he acknowledges his guilt. To make a confession admissible it must have been made freely and voluntarily without being induced by another with the slightest hope of benefit or the remotest fear of punishment or injury. All admissions should be scanned with care and confessions of guilt shall be received with

great caution. A confession alone uncorroborated by any other evidence shall not justify a conviction. To make a confession admissible it must have been made voluntarily without having been induced by another by the slightest hope of benefit or the remotest fear of injury. It is a question for the jury to determine, first, whether a confession was made, and secondly, if made, whether it was made voluntarily, without being induced by another by the slightest hope of benefit or the remotest fear of injury. If made, but not voluntarily and without being induced by another by the slightest hope of benefit or remotest fear of injury, the jury should not give it any consideration at all." Movant avers that such charge was erroneous, and not sound as a principle of law.

The following assignments of error are argued: "At no point in the trial or record of said case did the prosecution claim a confession. That reference to a portion of the evidence as a confession, whether oral or in writing, when the same was not a confession or admission of guilt, even referring to it as a contention of the State, is error when the same was clearly one of justifiable homicide. (b) That it was misleading to the jury. (c) That it was confusing to the jury. That it was erroneous for the following reason: That said purported evidence did not constitute a confession or an admission of guilt, and a charge relative to such when the same was not involved should not have been the subject of any portion of the charge. By reference to it in the charge, the trial judge indicated to the jury that a confession was involved, when as a matter of fact such was not the case." The evidence did not constitute a plenary confession. While it is true that the defendant admitted that he cut the deceased (and the record reveals that only one stab was made with a knife), he did so under such circumstances as would justify him, as follows: "The deceased, Bellamy, run his hand in his pocket, and he thought he was going to do something to him, and he pulled his knife and cut him." We do not think this is a confession. While he admitted the killing, and gave his reason therefor, as stated to the witness, the evidence was sufficient to bring in the question of whether, under all the circumstances of the case, he acted under the fears of a reasonable man. Our leading case on this principle, since followed by our appellate courts, and cited many times, is *Cumming* v. *State*, 99 *Ga.* 662 (2) (27 S. E. 177), wherein the Supreme Court said: "While provo-

cation by words, threats, menaces or contemptuous gestures shall in no case be sufficient to reduce a homicide below the grade of murder, when the killing is done not because or on account of any fear in the mind of the slayer, but solely for the purpose of resenting the provocation given, it is nevertheless true that threats, accompanied by menaces, though the latter do not amount to an actual assault, may in some instances be sufficient to arouse the fears of a reasonable man that his life is in danger, or that a felony is about to be perpetrated upon him. In all such cases the motive with which the slayer acted is for determination by the jury; and if it be claimed that the homicide was committed, not in a spirit of revenge, but under the fears of a reasonable man, it is for the jury, and not for the judge, to decide whether or not the circumstances were sufficient to justify the existence of such fears." We are therefore confirmed in the opinion that for the court to treat the statement of the defendant as a confession was injurious, and reversible error, and was contradictory to other portions of the charge, wherein the court correctly charged the principle of law as to the fears of a reasonable man acted upon in good faith. This is always a jury question. We are constrained to hold that the jury might have been confused, and the case of the defendant prejudiced by the charge on confession. Otherwise the charge of the court was exceedingly clear and well adjusted to the evidence and issues in every respect.

It is earnestly contended by the State that the charge, of which complaint is made, is controlled by the ruling in *McCloud* v. *State*, 166 *Ga.* 436 (143 S. E. 558). The facts in that case are quite different from those in the case at bar, in that the accused was never arrested, but was in express disobedience to the officer in refusing to go with the officer, whereupon the officer reached for his gun. Under such facts the Supreme Court held in effect that the officer had a right to draw his gun in an effort to enforce obedience, and that the defendant had no right to kill the officer under such circumstances. In addition, the evidence in the *McCloud* case showed that the defendant fired at the officer not once, but several times. *Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*